# ELLIOTT AND PERKINS v. MAYFIELD AND WIFE.

1. The act of 1832, [A'k. Dig. 253,] which authorises an execution to issue against the surety of an executor to his official bond upon a return of "no property found," to an execution issued on a decree of a County Court against the executor, was intended to embrace bonds executed prior to its passage, but was not intended to retroact upon *decrees* of the Orphans' Court rendered prior to the passage of the law. The act is constitutional.

2. E. & W. being appointed executors of S. qualified as such, and entered into the following bond: "Know all men by these presents, that we, Edward B. Elliott and Thompson Windham, executors of Iohn Spencer, Hardin Perkins and Enoch Elliott, as sureties for said Edward B. Elliott, and William Glover and *John Cummings* as sureties for Thompson Windham, are held and firmly bound unto Hume R. Field, Judge of the County Court of Tuscaloosa county, and his successors in office, in the penal sum of thirty thousand dollars, to which payment well and truly to be made, we and each of us do bind ourselves, our heirs, &c. firmly by these payments. Sealed with our seals and dated this 24th January, 1827.

Now the condition of this obligation is such, that, whereas, the above bound Edward B. Elliott and Thompson Windham, have been duly appointed executors of the last will and testament of John Spencer, deceased—Now if the said Edward B. Elliott and Thomas Windham shall well and truly perform all the

Elliott and Perkins v. Mayfield and Wife.

duties which are or may be by law required of them, as such executors, then the above obligation to be void, else to remain in full force and virtue.

Witness our hands and seals the date above written.

|                    |          |
|--------------------|----------|
| E. B. ELLIOTT,     | [seal.]  |
| THOMPSON WINDHAM,  | [seal.]  |
| H. PERKINS,        | [seal.]  |
| ENOCH ELLIOTT,     | [seal.]  |
| W. Y. GLOVER,      | [seal.]  |
| THOMAS CUMMINGS,   | [seal.]  |

Held—first, that as it was clearly the intention of the sureties to this bond not to bind themselves jointly for both executors, but severally for each, the bond would operate as the several bond of each executor, with his sureties, and was in effect the same as if separate bonds had been executed—second that there was nothing in the condition to contradict this intention, or to show that it was intended as a joint bond—third, the mere fact that the bond appears on its face to have been executed by *Thomas Cummings* instead of John Cummins, will not render the bond void as to the other parties who executed it.

ERROR to the County Court of Tuscaloosa.

This was a petition for a supersedeas to an execution issued from the Orphans' Court of Tuscaloosa, by the defendants against the plaintiffs in error, which was dismissed by the Court.

The record discloses that the last will and testament of John Spencer was admitted to probate on the 24th January, 1827, by which he appointed William M. Marr, Edward B. Elliott and Thompson Windham his executors—that on the same day Elliott and Windham entered into the following bond:

" Know all men by these presents, that we, Edward B. Elliott and Thompson Windham, executors of John Spencer, Hardin Perkins and Enoch Elliott, as sureties for said Edward B. Elliott, and William Glover and *John Cummings,* as securities for Thompson Windham, are held and firmly bound unto Hume R. Field, Judge of the County Court of Tuscaloosa county, and his successors in office, in the penal sum of thirty thousand dollars, to which payment well and truly to be made we, and each of us, do bind ourselves, our heirs, &c. firmly, by these presents, sealed with our seals, and dated the 24th day of January, 1827.

Now the condition of the above obligation is such, that, whereas, the above bound Edward B. Elliott and Thompson Windham have been duly appointed executors of the last will

and testament of John Spencer, deceased—Now if said Edward B. Elliott and Thompson Windham shall well and truly perform all the duties which are, or may be, by law required of them, as such executors, then the above obligation to be void, else to remain in full force and virtue.

Witness our hands and seals the date above written.

E. B. ELLIOTT.          (seal.)
his
THOMPSON ⋈ WINDHAM, (seal.)
mark.
H. PERKINS,            (seal.)
ENOCH ELLIOTT,         (seal.)
W. Y. GLOVER,          (seal.)
THOS. CUMMINGS,        (seal.)

Attest,      H. T. ANTHONY, Clerk.

On the 5th May, 1828, Thompson Windham resigned his trust in the following words:

"I do hereby refuse to act any longer as the executor of John Spencer, deceased, and to continue any longer as the security of William Elliott, as executor of said estate. 5th May, 1828.

THOMPSON WINDHAM.

Thereupon the Court ordered that he be removed from the appointment of executor of the estate.

On the 14th January, 1831, a settlement was made of the accounts of William Marr and Edward B. Elliott, as executors of the estate of John Spencer, deceased, and a decree rendered in favor of each of the heirs for the respective amounts due them in the hands of the executors. Among which is the decree in favor of Louisa Spencer, (wife of defendant in error,) for seven hundred and eleven dollars ninety-seven cents, against Edward B. Elliott.

On the 27th of August, 1838, execution issued on said decree, pursuant to an order made on a *scire facias* against Edward B. Elliott, which was returned "no property found," and on the 19th November, 1841, an execution issued against the plaintiffs in error as the sureties of Edward B. Elliott, for the amount of the decree.

To quash this execution the plaintiffs in error filed their pe-

tition in the County Court, which at the hearing was dismissed by the Court, and from which judgment this writ of error is prosecuted. The assignments of error are—

1. The executor's bond is void or inchoate, because executed by Thomas Cummings and not John Cummings.

2. The bond being joint and several, was discharged by the release of Thompson Windham, and if not the execution should have issued against all the co-obligors.

3. The statute authorizing an execution to issue against sureties to an administration bond, cannot operate retrospectively.

4. The statute is unconstitutional.

CRABB & COCHRAN and PARSONS for plaintiff in error.

The act of 1832, [Aik. Lig. 253,] which authorizes execution to issue against the sureties of executors upon an execution returned *nulla bona* against the executors does not apply to this case, because the act was not in existence when the bond was executed or the decree rendered and the act cannot operate retrospectively. [3 Marshall, 138 ; 1 Kent's Com. 4th ed. 454; Dwarris on Stat. 680 ; 3 Story on Con. 247, 266, 250 ; Minor's Rep. 57 ; 8 Porter, 171 ; 3 Ala. 145; 7 Johns. 508 ; 2 Cranch, 272 ; 3 Call, 238 ; 5 S. & P. 276 ; 7 Gill. & J. 205; 15 Mass. 447 ; 16 id. 270 ; 9 Wheaton, 728.]

The plaintiffs in error were not, at the issuance of the execution, sureties of E. B. Elliott—

1. Because it was never executed by all the persons who were intended to be parties as shown by the body of the instrument. [17 Mass. 591 ; 2 Pick. 24; Minor, 103 ; 4 Watts, 2 Leigh. 157.]

2. Because the supposed bond, if ever valid, being the joint and several obligation of the parties, was released by the resignation, removal and discharge of Windham, one of the co-obligors. [9 Wheaton, 680, 720 ; 2 Pick. 223.]

If Windham was not released, then proceedings should have been had against him and the other co-obligors, and Windham was a guarantor of all the sureties against injury. [2 Conn. 536 ; 3 Binney, 126; 2 Brockenbrough, 160, 420.]

That the bond bound all the obligors alike, notwithstanding the recital in the bond that two of the obligors were sureties

for Windham and the other two for Elliott; but that if this does not appear in the obligatory part of the bond, it does in the condition which will control the obligation.

The statute of 1832, is unconstitutional as applied to this case, because retroactive and in disparagement of rights essential to the security of property. [3 Story on Con. Law, 240, 266; Constitution of Ala. Art. 1, §10; 1 Kent's Com. 4th ed. 455, n. c. 2 Ala. Rep. 31; Minor, 57; 17th Johns. 215; 20 id. 105.]

Because, also, it is in violation of the right of trial ,by jury, and is the exercise by the legislature of judicial power. [Amendments Con, U. S. Article 7; Cons. of Ala. Art. 1, §28; 2 McCord, 55; 2 Ala. Rep. 31; 1 id. 559; 2 Dallas, 304; 2 Stew. 225; Con. of Ala. Art. 2, §1, 2; 7 John. 508; 2 Cr. R. 272; 15 Mass. 447; 16 id. 245; 7 G. & J. 205.]

Peck & Clark, contra.

The bond in this case must be so construed as to give effect to the intention of the parties. [Willes' Rep. 332, Com. on Con. 37, 38.] The manifest intention of the parties was that Glover and Cummings were to be sureties for Windham, and Elliott and Perkins for Elliott. That it is therefore in effect two bonds, and should be so considered by the Conrt, as no rule of law forbids it.

The resignation of Windham did not affect the bond as it respected Elliott and his sureties, the plaintiffs in error, as they were only bound for Elliott.

The act of 1832, did not impair the obligation of the contract, it gave a new remedy, but left the obligation the same. [5 S. & P. 276, 280; 1 Bibb, 567.]

The true distinction is between those laws which have reference to the nature, essence and construction of a contract, and those which have reference to the mode of enforcing it. [Story Con. Law, 477; Sturgis v. Crowninshield, 4 Wheaton, 122.]

ORMOND, J.—The counsel for the plaintiff in error, maintain that the bond, which is the foundation of this proceeding, was executed by the plaintiffs in error, with two other persons as joint sureties of both the executors of John Spencer, and that

the execution should have issued against all the sureties and not against the plaintiffs in error only.

The language of the bond is, " Know all men by these presents, that we, Edward B. Elliott and Thompson Windham, executors of John Spencer, Hardin Perkins and Enoch Elliott, as securities for Edward B. Elliott, and William Glover and John Cummings as securities for Thompson Windham, are held and firmly bound, &c.

We think it very clear that the persons who executed this bond as sureties, did not intend to bind themselves jointly for both executors, but severally for each, as is explicitly stated. The language employed is plain, clear and unambiguous, leaving no room for doubt as to what the intention of the parties was, and as it is the duty of Courts to give effect to the contract as it was understood by the parties to it, this instrument must have the same effect as if separate bonds had been executed, by each of the executors and their several sureties. It would, to be sure, have been more formal if separate bonds had been executed, but we do not think the intention to sever the liability of the sureties, and to limit it to the acts of a particular individual would have been more certainly indicated by that course than by the mode adopted, to which we know of no legal objection.

It is further contended that any ambiguity which may exist in the obligatory part of the bond is removed by the language of the condition which it is supposed shows that the sureties intended to bind themselves jointly, and that if there is any discrepancy between the condition and the obligatory part of the bond the latter must yield to the former.

Although we are by no means disposed to assent to this proposition, we think no such discrepancy exists. The condition in effect, refers to the stipulations in the obligatory part of the bond and declares that if the executors perform the duties required of them by law, that the bond shall be void. It would be a forced and unnatural construction to suppose that it was intended by these general expressions to change the stipulations of the bond so as to make all the sureties bound jointly, for both the executors. The natural and fair interpretation of the condition is, that if each of the executors should perform the

duties required of him by law, the sureties of each should be discharged from the obligation.

It is further insisted that the bond is not obligatory on the plaintiffs in error, because not executed by all the persons who are recited in the obligation as parties to it.   This objection rests on the fact that the bond recites that *John Cummings* is one of the sureties of Windham, and the bond appears to have been executed by Thomas Cummings.

The obvious answer to this is, that if it were true as stated, it could not affect the plaintiffs in error, who were the sureties of Elliott, and not bound for the acts of Windham.   It is true that if the plaintiffs in error executed the instrument as an *escrow*, to be their bond only on condition it was executed by John Cummings, and Thomas Cummings had been afterwards substituted without their consent, it would not be their bond. But this fact was not put in issue in the Court below, and cannot therefore be made in this Court.   For aught this Court can know, the plaintiffs in error may have executed the bond unconditionally and not as an *escrow*.   Or the latter may have subsequently assented to the substitution of Thomas for John Cummings; this objection, therefore, cannot prevail, at least in the mode now presented.

The act under consideration, which passed in 1832, is to the following effect: "Whenever any execution shall have issued on any decree made by the Orphans' Court, upon final settlement of the accounts of executors, &c. and is returned by the sheriff "no property found," generally, or as to part thereof, execution may and shall forthwith issue against the sureties of such executors, &c.   [Aik. Dig. 253, §40.]

The decree of the County Court upon which the execution in this case issued, was rendered in 1831, and previous to the passage of this law, and it is now maintained that this act is unconstitutional if intended to embrace cases like the present, because the law would then be retroactive in its character, and in disparagement of rights essential to the enjoyment of property.

It is now well understood that the prohibition of the constitution of the United States against the passage by Congress of *ex post facto* laws, applies only to criminal cases.   [Calder v. Bull, 3 Dall. 386; Satterlee v. Matthewson, 2 Peters, 380;

Wilkinson v. Leland, id. 627; 3 Story's Com. on Con. 266.] And such is held to be the true construction of a similar clause in the Bill of Rights of this State in the case of Bloodgood v. Cammack, [5 Stew. & Por. 276.]

It is equally well setted that a change in the remedy, or means of enforcing the contract does not impair its obligation. Sturgis v. Crowniushield, 4 Wheaton, 200; Ogden v. Saunders, 12 id. 262; 3 Story Com. on Con. 250.]

Now, so far as the act in question operates on the bond of the plaintiffs in error, its whole effect is to authorize an execution to issue against the surety, upon a return of " no property found," to an execution against the principal, instead of the more tedious process in force when the bond was made, of bringing suit against the surety in the ordinary mode, after the inability of the principal to pay was ascertained.

Of the power of the legislature to pass such a law we entertain not the slightest doubt. The undertaking of the surety was to answer for the default of his principal—this liability the law does not alter or change in the slightest degree—it leaves the rights of the parties precisely as they were, and merely provides a different mode of enforcing them. The law then, merely respects the remedy—a matter which is entirely within the discretion of the legislature, both as it regards existing and future contracts, provided a remedy of some kind is given.

It is further insisted that the act in question impairs the right of trial by jury, which the constitution declares shall forever remain inviolate. [1st Art. §28.]

Executor's bonds and others of that class are executed in the presence of a judicial officer, approved by him, recorded and preserved in the office of the County Court. A very strong presumption therefore arises that these documents are genuine, and that the parties to them are subject to the liability which their execution imports. Upon this natural presumption the legislature has acted, but without intending to deny to any one the right to repel this presumption. If, for example, the execution of the bond were denied, upon an application to a Chancellor, he would direct an issue to be tried by a jury to ascertain that, or indeed any other, fact, which might be open for adjudication, and contested between the parties.

Our legislation affords many similar examples in which bonds are declared *prima facie* to have the force and effect of judgments. In none of them is the right to appeal to a jury, upon a proper case, prohibited by the legislature. Nor can one be supposed in which such a right would be denied by the Courts upon a proper case being presented.

It having been shown that it was within the power of the legislature, to pass laws having a retrospect as it regarded the remedy for the enforcement of contracts, it remains but to inquire, whether it was the intention of the legislature that this law should be retrospective in its operation.

· It is certainly true of all laws, that unless the contrary be clearly expressed, it must be intended they are to operate in future, unless a contrary presumption must be made to give effect to the plain design of the legislature. In the language of this Court in the case of Philips v. Gray, [1 Ala. Rep. N. S. 226,] "The future is the appropriate field for legislation, and a statute is never allowed to have a retrospective operation unless clearly so expressed, or unless such implication must be made to give effect to the manifest intent of the legislature."

The act does not, it is true, declare that it shall operate on bonds then executed, but the mischief to be prevented was the delay of suing on the bond of the surety, when by the inability of the principal to pay, ascertained by due course of law, the liability of the surety was fixed. It would be most unreasonable to suppose that in redressing this evil, the remedy was intended to be confined to bonds executed after the passage of the law. Nor has such an interpretation been put upon this or any of the similar laws to be found on our statute book, since their passage; but on the contrary it has always been understood, that they applied as well to bonds executed before as after the passage of the law giving a more summary remedy. Such was doubtless the intention of the legislature, and such must be the effect given to the law.

We do not think, however, that the act was intended to embrace those cases where decrees had been rendered previous to its passage. This would be to give an effect to the decree of the County Court, which it had not at the time it was rendered, and although it might be conceded that the legislature

54

had such power, we do not think it reasonable that it was in its contemplation. In all cases where decrees at the passage of the law had been rendered, it might have been, and doubtless was, supposed that the remedy by suit on the bond had been resorted to, and to prevent such necessity in future was the design of the law. The reasoning therefore which applies to the bond, loses much, if not all its force, when applied to the decree. In a word, there is nothing either in the subject matter on which the law was to operate, or the mischief to be prevented, to repel the presumption which applies to all laws that they are intended to operate in future. The case of the Commonwealth v. Hewit, [2 H. & M. 181,] is very similar to this case. An act had passed declaring that when property taken by a sheriff remained unsold at the time of his death, the Clerk should issue a writ of *venditioni exponas* to his successor.

The Court held that the law could not have a retrospect so as to reach cases happening before its passage ; notwithstanding the preamble recited that, whereas, doubts existed as to the law, &c. [See also 2 Ala. Rep. 54, and cases there cited.]

From the view we have taken of the case, it becomes unnecessary to examine some of the questions presented in argument. The conclusion we have come to is decisive against the judgment of the County Court. As there was no authority to issue this execution, it should have been quashed.

The judgment of the County Court must be therefore reversed, and a judgment be here rendered quashing the execution.