## TALIAFERRO, Adm'r, v. BROWN, use, &c.

I. G. having purchased from his partner a stock of goods, entered into a bond with surety, with covenants to the following effect: "Now therefore, be it known, that we, James Gillan, Neil Blue, Richard A. Colclough, W. A. Armstrong, John Martin, and Thornton Taliaferro, do hereby, for and in consideration of the sum of one dollar, to us in hand paid, by the said Shepherd Brown, the receipt of which is hereby acknowledged, as well as for the consideration aforesaid, covenant and agree to bind ourselves, our heirs, executors, &c. jointly and severally, unto the said Shepherd Brown, his heirs, &c., to save him harmless from the payment of all debts, or liabilities due from said concern, as well as all loss, liability or damage, that he has, or may incur, as a partner of the said Gillan. We jointly and severally guaranty, that the said James Gillan, shall fully satisfy and discharge all debts, dues, or demands, arising from said establish-

ment." *Held*, that this was a bond of indemnity against loss, or damage, and was not a covenant to B. against liability to suit.

2. When a cause is transferred from the orphans' to the chancery court, the latter will take it in the plight and condition it is then in, and proceed with it like other chancery causes, applying the law regulating such estates in the orphans' court.

Error to the Chancery Court of Montgomery.

THIS cause was transferred to the chancery court, from the orphans' court of Montgomery, on the 10th March, 1842; the estate was declared insolvent, and an order made to file claims by the first Monday in June, 1843. The claim of the defendant in error was filed. On the 3d October, 1843, it appears from the record, there was a cause on the docket of the orphans' court of the defendant against the plaintiff in error, and continued from time to time until the transfer to the chancery court, previous to which time the deposition of James Gillan had been taken, by order of the orphans' court, and returned.

The claim of the defendant in error is founded on a bond, as follows:

*The State of Alabama, Montgomery county.*

Whereas, a co-partnership has heretofore existed between Shepherd Brown, of Wythe county, Virginia, and James Gillan, of the town of Montgomery, Alabama, as merchant tailors and clothiers, which has this day been dissolved. The said business having been conducted in the name of James Gillan, and the said Gillan having purchased of the said Brown his entire interest in said business, consisting of all the stock on hand, debts and every thing else belonging to said business, and received the same, hath for and in consideration therefor, covenanted and agreed to secure and indemnify and save harmless the said Shepherd Brown from the payment of all debts, due from said concern, as well as all loss, liability and damage whatsoever. Now therefore, be it known, that we James Gillan, Neil Blue, Richard Colclough, W. A. Armstrong, John Martin, and Thornton Taliaferro, do hereby for and in consideration of one dollar to us in hand paid

by the said Shepherd Brown, the receipt of which is hereby acknowledged, as well as for the consideration aforesaid, covenant and agree. to bind ourselves, our heirs, executors, &c. jointly, and severally, unto the said Shepherd Brown, his heirs, &c. to save him harmless, from the payment of all debts, or liabilities due from said concern, as well as all loss, liability or damage, that he has, or may incur, as a partner of the said Gillan. We jointly and severally guaranty, that the said James Gillan, shall fully satisfy and discharge all debts, dues, or demands, arising from said establishment.

In testimony whereof the parties have hereunto set their hands, and affixed their seals, this 28th October, 1837.

|                       |          |
| --------------------- | -------- |
| JAMES GILLAN,         | (seal.)  |
| NEIL BLUE,            | (seal.)  |
| R. A. COLCLOUGH,      | (seal.)  |
| W. A. ARMSTRONG,      | (seal.)  |
| JNO. AUSTIN,          | (seal.)  |
| T. TALIAFERRO,        | (seal.)  |

There was also filed a list of liabilities still due from the firm, and claimed under the bond, amounting to about $30,000.

The chancellor considered, that the bond was not only to indemnify and save Brown harmless from the payment of the partnership debts, but also contained an express covenant that Gillan would fully satisfy and discharge all the debts of the firm, and that this covenant was broken upon the failure of Gillan to pay any portion of the former debts, and decreed that the claim be sustained for the amount of the partnership debts unpaid, and a reference to the register, &c. &c.

The defendants prosecute a writ of error from this decree, and assign many errors, which are sufficiently noticed in the opinion of the court.

J. P. SAFFOLD, with whom was T. WILLIAMS, for plaintiff, in error. The chancellor erred in the construction he put upon the bond. The introductory clause of the agreement, the context, and the object to be effected, show the true meaning of the parties, and that it was intended as a mere bond of indemnity. Upon the construction put upon it, it was broken the moment it was made, a construction so high-

ly unreasonable, especially as it regards the sureties, that it should not be made without the clearest evidence that such was the intention of the parties. Without a suit or judgment against Brown, he cannot recover damages. [3 Bibb, 196; 3 B. Monroe, 307; 5 Ala. R. 615; 14 Johns. 177; 1 Saunders, 117, n. 1; 1 B. & P. 688; 1 Hill N. Y. 5, 6; 4 N. H. 497; 7 Johns. 358; 4 Mass. 627; 8 Johns. 198; Kirby, 396; 7 Wend. 503; 16 Pick. 147.]

The circumstances under which the agreement was made, the subject matter of the contract, the situation of the parties, the motives that led to it, and the object to be attained, may all be looked to, to get at the intention of the parties. [2 Ala. 434; 5 Id. 613; Platt on Cov. 136.]

Extraneous evidence is admissible to aid the construction of a written instrument, so far as to ascertain the circumstances under which it was made, and the subject matter which is done by the testimony of Gillan. [2 Ala. 445; 10 Mass. 379, 459; 2 N. H. 75; Fell on Guaranty, 116.]

The extent of the condition of a bond of indemnity may be restrained by the recitals, and this espeeially in the case of a surety. [4 Taunt. 593; Hurlston on Bonds, 32, 33, 109, 112.] And the letter of the condition departed from to carry the intent into effect. [3 Cranch, 229.] The condition of a bond is for the benefit of the obligor, and is to be construed most strongly in his favor. [Hurlston on [Bonds, 32.] And words of doubtful import ought not to receive such a construction as to make the party using them liable for the debt of another. [Story on Con. 353.]

The concluding words of the covenant furnishes a key to all its difficulties, by that it appears a mere guaranty was intended. [4 Pick. 385; 8 Id. 428; 14 Id. 353; 18 Id 534; 24 Id. 250.]

The undertaking of the sureties was for the performance of a contract previously entered into, as shown by the recitals in the bond, it was therefore void for want of consideration. The sum of one dollar recited in the bond, is merely nominal, and was never received. The original consideration between the parties to the first contract, will not support the subsequent engagement of the sureties. [6 Ala. R.

89

615.] This case is unlike McKenzie v. Jackson, 4 Ala. R. 230, there, there was a consideration in the receipt of the goods.

ELMORE and BELSER, contra. The covenant is, that Brown shall be saved harmless from "liability," and that the parties *will pay the partnership debts.* The express object is something more than to indemnify him from paying the debts. The intention is, that he shall in no event be obliged to pay or shall incur a liability to pay; but that he shall be *discharged and acquitted from the debts and all liability therefrom.* The parties covenant to pay, and thereby to save him from the liability to pay, and a right of action accrued to Brown the moment the liability occurred, and to the same extent. If the debts were not due, and they were not paid at maturity, the breach then occurred. If already due, a reasonable time is given for their payment before a breach can be insisted on. [8 Wend. 452; 8 Cowen, 639; 4 Rawle, 97; 2 Vermont 532; 4 Id. 209; 1 Chip. 164; 2 Bay. 145; 1 Freeman, Ch. 541; 1 Saunders, note 117; 3 B. Monroe, 307; 7 Ala. 799; 1 B. & P. 638; 7 Term, 97, margin; Hurlston on Bonds, 95; Shep. Touch. 385.]

Many other points were argued, and authorities cited by the counsel on both sides, but the view taken by the court renders it unnecessary to cite them.

ORMOND, J.—The principal question presented upon the record, and which indeed comprises the entire merits of the case, is, what is the true construction of the bond—is it a covenant to pay the debts of the firm, or was it intended to indemnify, and save harmless the retiring partner against the creditors of the firm.

The bond itself, which ought to be the surest index to the meaning of the parties, affords but little aid. It commences by a recital, that the object is to "secure, indemnify, and save harmless the said Shepherd Brown, from the payment of all debts due from said concern, as well as all loss, liability and damage whatsoever." Then comes a covenant to save him harmless from the payment of all debts, liabilities, &c. as a partner of the concern, and closes with a *guaranty,* that

James Gillan, the continuing partner shall fully satisfy and discharge all debts, &c.

If a controlling effect is given to some of these covenants, it is a mere bond of indemnity against loss, and the covenantee is not prejudiced, until he is injured, or at least exposed to injury by a suit being brought against him for the debts of the firm. If on the other hand, we select the covenant to pay the debts of the firm, it was broken by the omission to pay the debts as they become due.

The duty, as well as the purpose of the court, is, if possible to find out the intention of the parties, and if that is lawful, to give effect to it, and when, as here, the language employed is so ambiguous and contradictory, as to leave it doubtful what the parties did intend, we must call to our aid the surrounding circumstances, the object the parties had in view, and the state and condition of the parties, as well as the subject upon which the contract was to operate. We are, if possible, to give effect to the entire instrument, and if that cannot be done, from the repugnancy of its several stipulations, we must put such a construction as appears to comport best with the motives the parties had in view in entering into it. See this subject considered at large in Watts v. Shepherd, 2 Ala. 434.

The avowed object of the deed, was the indemnity of the retiring partner, Brown, against loss, from the debts due by the concern, and whether this bond was intended as an indemnity against the payment of these debts, or against liability to suit on that account, comports equally well with the object in view. The covenants of the deed will suit either view of the case, but in our opinion, the circumstances attending the transaction, enable us to declare that the purpose was that of indemnity merely.

In the first place, it is extremely improbable that Gillan, the remaining partner would enter into a covenant which would expose him to suit from Brown, if the debts were not paid at maturity, and also leave him exposed to a suit from the creditors of the firm. This presumption is greatly increased as it respects the sureties of Gillan to the bond, who would upon that assumption, not only be the indemnitors of Gillan to Brown, but in effect his surety for all the debts of the firm.

This view is greatly strengthened by the fact, that a large amount of the debts was due at the time, and upon the supposition that it is a covenant against liability to suit, they became liable to a suit as soon as the bond was made, or at least in a reasonable time after.

In Lewis v. Crocket, 3 Bibb, 196, this is considered as a controlling fact in doubtful cases. The court say, the distinction seems to be between a covenant or condition to indemnify against a debt, or duty already incurred, and a covenant or condition, to indemnify against a debt or duty which may accrue in future. In the former case, the covenant, or condition, is not broken without suit, in the latter a mere liability to suit is a breach of the condition, or covenant. This principle is again recognized, in the case of Robertson v. Morgan, 3 B. Monroe, 307. Some of the debts were not due at the time the covenant was made, but it is impossible to hold, that the same words should have different meanings, as applied to different parts of the same instrument. The question here is, as to the intention, and if that is ascertained, it must control the entire instrument.

The concluding part of the condition, is, to say the least, of very doubtful import. The sureties, "guaranty, that the said James Gillan shall fully satisfy and discharge all debts," &c. We cannot suppose that the parties used this term in its ordinary acceptation, as a commercial guaranty, as this would be directly at war with other portions of the bond, equally entitled to be considered as just exponents of its true meaning. It was doubtless used in its popular sense, of indemnifying or saving harmless. It is in fact a warranty merely against loss or damage.

These remarks would have no place, if the language of the bond was clear, and explicit, but in exploring this doubtful instrument, to ascertain by the dubious light it affords, the intention of the parties, we are constrained to consider the probable inducements to entering into it, and the consequences of the construction contended for. A consideration of these, has led us to the conclusion, that it was intended by the parties as an indemnity merely against loss, or damage, and not a covenant against liability to suit.. It follows that Brown cannot recover upon it, until he shows that he is damaged,

either by being compelled to pay the debts, or possibly by suit being brought against him for their recovery. For illustrations of these principles, see Lord Arlington v. Murrel, 2 Saunders, 412; Pearsall v. Summersett, 4 Taunton, 493; Douglass v. Clark, 14 Johns. 177; Boynton v. Dalrymple, 16 Pickering, 147; Prescott v. Truman, 4 Mass. 627, and Hurlston on Bonds, 112, where the English authorities are collated.

The cases cited on the other side, do not militate against these views. In the cases upon bonds given by a deputy to his principal, for indemnity against a breach of duty, the plain intention is to save the principal harmless from suit. Besides, in such cases, the covenants are always prospective, and look to the future for their operation, and thus fall directly within the rules here laid down; such was the case cited in 3 B. Monroe, 307. Nor indeed is there any difference of opinion on this subject. All agree that the intention, when it can be ascertained, will control the language. Thus in the matter of Negus, 7 Wend. 499, cited on the other side, the court say, "If a bond in which the obligor covenants affirmatively to pay certain sums, concludes with a covenant to indemnify and save harmless the obligee, it does not therefore become a mere bond of indemnity, unless such appears from the whole instrument to have been its only object." Similar principles are avowed in Chase v. Hinman, 8 Wend. 452.

The case of Laroque & Hatch v. Russell, 7 Ala. 798, has no application here. The court in that case merely gave effect to the contract of the parties. The principal, by giving his own note to the surety, payable at a particular time, was understood as stipulating, that the surety might then sue upon it, whether he had sustained actual damage or not.

This conclusion disposes of most of the questions raised by the assignment of errors; as however the case must go back, it is proper to remark, that in our opinion, it was not the intention of the legislature, in authorizing the transfer of cases like this to the chancery court, when the judge of the orphans' court was incompetent to sit, that the chancellor was *pro hac vice*, to sit merely as a judge of the orphans' court. In the case of insolvent estates, such as this, in which

by the act of 1843, issues are to be tried by a jury, it is manifestly impracticable.   And if the chancellor should direct the issues to be tried at the bar of the circuit court, sitting as the court of chancery does but once a year, several years would elapse before an estate could be settled.   Such a result as this could not have been contemplated by the legislature, as the consequence of the transfer.   We therefore conclude, that in all cases transferred from the orphans' court to chancery, the chancellor will take them in the plight and condition they are in at the time of the transfer, and proceed with them as in chancery cases, applying the law regulating such estates in the orphans' court, changing only the mode of procedure, in the same manner as if the cause had originated in his court.

Let the decree be reversed, and the cause remanded for further proceedings in conformity herewith.   The defendant in error will pay the costs of this court.

On motion of the defendant in error, the cause was re-arrgued.

HAYNE and N. HARRIS, for defendant in error.
T. WILLIAMS and J. SAFFOLD, contra.

ORMOND, J.—This case having been again argued, and having given to it a deliberate re-consideration, we are constrained to abide by the judgment heretofore pronounced.

The only question is, what was the intention of the parties?   The covenant is ambiguous, inasmuch as it is by its terms a covenant of indemnity merely against loss, and also a covenant against liability to suit.   This is admitted by the counsel for the plaintiff in error, but it is insisted that the rule in such cases, is to give effect to the covenant against liability, as it is not inconsistent with, but includes the other covenant against loss.   The authorities principally relied on, in support of this position, are Chase v. Hinman, 8 Wend. 452; Webb v. Pond and Lansing, 19 Id. 4?8; Ex parte Negus, 7 Id. 499; and Port v. Jackson, 17 Johns. 479.

We do not understand the court to hold in these cases, especially in Ex parte Negus, and Chase v. Hinman, that when

Taliaferro, adm'r, v. Brown, use, &c.

these covenants are found together, they are conclusive of the intent, but that in such a case, the covenant is broken as soon as the covenantee is exposed to a suit, unless it can be gathered from the entire instrument, considered in connection with the character and purpose of the parties, that the object was indemnity merely, and in all of them, an elaborate examination is made of the surrounding circumstances, as evidence that the parties did not intend an indemnity merely, but a covenant against liability to suit.

Assuming this to be a sound exposition of the law, what are the prominent facts attending this transaction? They are, that Brown was selling his interest in a partnership to Gillan, his co-partner, the latter receiving all the effects of the firm, and becoming bound for the payment of the debts, a large amount of which were then due. If this covenant was between these parties, we think it would be entirely reasonable to infer, that Gillan undertook to pay the debts, as he could not otherwise secure Brown against "liability" from those debts, and it would seem altogether proper, that the remaining partner, receiving the effects of the firm, should pay the debts himself. But this reasoning, cogent as it is, when applied to these parties, loses much, if not all its force, when applied to those persons who signed the instrument as the sureties of Gillan. He, as one of the partners, was already responsible to the creditors of the firm, but these sureties were not in that condition. To hold them responsible, if the retiring partner was subjected to liability to suit, would be an undertaking on their part, (at least to the extent of the debts then due,) to pay the debts presently. A construction such as this, ought not to be put upon their undertaking, unless their covenant, in clear and explicit terms, admits it. Even where a surety did use these clear and explicit terms, it has been held that the circumstances would control the language, and convert it into a bond of indemnity.

Such was the case in Douglass v. Clarke, 14 Johns. 177. There, one Rice had given his bond to the collector, for the payment of the duties on stills, with Douglass as his surety; and Clarke gave to Douglass a counter bond, by which he bound himself to pay off and discharge the bond which Rice

and Douglass had executed, and to save harmless and indemnify Douglass against loss, damage, &c. The court held that the good sense and just interpretation of the bond was, that it was a bond of indemnity merely, and that the words pay off, and discharge, were thrown in without being understood to require the defendant Clarke, actually to pay off the bond. The ground of this construction was, the fact that Rice, and not Clarke, was the person primarily liable.

The case ex parte Negus, 7 Wend. 499, would be the counterpart of this, if Brown and Gillan were the sole parties to the covenant. There Negus covenanted to indemnify the retiring partner, and also to pay off the debts. The reasons given for the opinion are, that there was an express covenant on the part of Negus to pay the debts of the firm, and although a covenant to indemnify followed, that did not alter the force and effect of the preceding covenant; that the true question was, what was the intention of the parties; that as Negus had the means to pay the debt in his own hands, and the other partners had withdrawn from the concern, it was clearly the intention, that Negus should pay them. The court distinguish this case from Douglass v. Clarke, previously cited, saying, " here Negus assumes the debts of the partnership—he makes them his own individual debts. He is the person to pay, as was Rice in the case of Douglass v. Clarke; he is not a mere surety, as Clarke was." This case clearly recognizes the distinction we are now taking.

The case of Chase v. Hinman, *supra*, does not materially differ from the preceding. There, also, was a covenant to indemnify, united with a covenant to pay, or against liability to suit. The court went into an elaborate examination of the facts, and deduced from them, that the intention was to covenant against liability to suit. The facts are too complex to be stated intelligibly, within reasonable limits, but it differs from this, in the important particular that the covenantor was the person liable to pay, and did not stand in the condition of a surety.

The case of Port v. Jackson, *supra*, is supposed to be entirely analogous to this. The facts were, that Port leased from one Barlow certain premises for an unexpired term of 1600 years, and covenanted to pay him a yearly rent of £32;

17s. This term Port afterwards assigned to Jackson, taking from him a bond, by which he covenanted to keep, perform, and fulfil, all the covenants, conditions, &c. which Port had entered into with Barlow. Port sued Jackson upon this covenant, and the court held that it was broken, if the rent was not paid by Jackson to Barlow, when it fell due.

This case is supposed to be like the case at bar, because, as is urged, it is a covenant to pay the debt of another. It was in effect, if not in terms, a positive undertaking on the part of Port, to pay a certain sum for the rent of the land. Neither the terms of the bond, nor the object the parties had in view, authorized the interpretation that a mere indemnity was intended. Jackson was not a surety, stipulating that another should pay a debt, but was binding himself to do an act, and had in fact received the consideration for its performance, in the assignment of the leasehold estate. In this aspect, the case is entirely unlike the case at bar, where the party sought to be charged is a surety, and who certainly does not in terms, covenant to pay the debt himself. The case of Webb v. Pond and Lansing, *supra*, is a mere reiteration of the law as laid down in Chase v. Hinman.

So far then as we have considered this covenant, we think the fact, that the debts, or a large portion of them, were due when the covenant was entered into, and that the parties were mere sureties for Gillan, sufficiently indicates, that indemnity against loss, was what the parties contemplated at the time. The instrument is very obscure, and was evidently written by persons ignorant of the technical effect of the language employed by them. This is more apparent when we consider the last stipulation: " We jointly and severally guarantee, that the said Gillan shall fully satisfy and discharge all debts, dues and demands, owing from the said establishment ;" which it is insisted is an express stipulation on the part of the sureties to pay the debts of the firm if Gillan did not.

It is an established rule of construction, that the whole instrument must be taken together ; it would be manifestly unjust to select a single portion, and give effect to it, disregarding the rest. The construction contended for, involves the

idea of a contract entered into by the sureties, independent of the contract of their principal, which would convert this instrument into two bonds, one by which Gillan undertook to pay the debts, and another by which the sureties guarantied his performance of that contract. We know of no authority for doing this. The parties made but one bond, which the principal and his sureties executed jointly. The condition therefore must apply to all the obligors, and as it is impossible to suppose that Gillan *guarantied* to Brown that he would perform his own covenant, it follows inevitably, that the term is not employed by the parties in that sense, and the most rational conclusion from other parts of the instrument is, that it was used in the sense of warrant, or indemnify.

In Elliott and Perkins v. Mayfield and wife, 4 Ala. 422, a bond executed by two executors of an estate, with sureties, was held to be several in its effect, as it respected the principal, for which each set of sureties was bound. But that construction was forced upon the court, by the express language of the condition, which recited for which executor each set of sureties was to be answerable, and there was therefore no room for doubt, that it was not the intention of the sureties to become jointly bound for the acts of both executors. Such is not the case here. There is nothing on the face of the instrument, indicating that there was any distinction between the duties assumed by the principal and the other obligors as his sureties. The instrument is entire, and we cannot make such a decision as will destroy its unity, unless it manifestly appears, that such was the intention of the parties.

But if it were conceded, that this is a promise by the sureties to pay the debts of the firm, in the event Gillan did not, certainly this is not an unconditional promise. The debts which Gillan was to pay are not enumerated in the bond, and they were strangers to the firm. Before they could be liable on their engagement, it must be ascertained, not only that Gillan failed to discharge them, but also that they were notified of the fact. This results from the conditional nature of a guaranty, which is to answer for the payment of some debt, or the performance of some duty, in the event of the failure of another person, who is liable in the first instance.

[Lawson v. Townes, 2 Ala. 375; Douglass v. Reynolds, 7 Peters, 126.] There is no pretence here, that these debts have been ascertained, or any notice given in a reasonable time to the sureties, that Gillan had not complied with the contract, but after the lapse of many years, suit is instituted on the bond as an unconditional promise on the part of the sureties.

For the reason however previously given, we think the undertaking of the parties, whatever it was, was joint, and imposed the same liability on all the obligors.

If Gillan were the sole party to this bond, we should be inclined to think, contrary to our first impressions, that the construction contended for by the defendant in error, was correct; but as others are parties to it, who are mere sureties, such a construction must be put upon it, as will preserve its unity. It cannot be held to mean one thing as it respects Gillan, and another as it regards his sureties; and in our judgment, the last clause of the bond is conclusive to show, that they did not intend to subject themselves to a present and immediate responsibility, which as a considerable portion of the debts were then due, would be the effect of holding it a covenant to pay, or to indemnify Brown against liability to suit. The object the parties had in view, is satisfied by considering the bond an indemnity against loss or damage, and for that they have expressly provided, by one of the covenants of the bond. Others are added, creating a doubt whether something beyond an indemnity was not intended to be provided, but looking to the facts of the case, and the condition of the parties, the most reasonable construction appears to us to be, that the parties intended an indemnity merely.

COLLIER, C. J.—I have carefully examined the authorities cited and commented on in the opinion of the court, and cannot persuade myself that they sustain the conclusion there attained. The bond, the construction of which is drawn in question, recites that Gillan "covenanted and agreed to secure, indemnify and save harmless the said Brown from the payment of all debts due from the said concern, as well as all loss, liability and damage whatever."

Gillan and the intestate of the plaintiff in error say that we "covenant and agree to bind ourselves, our heirs, &c. unto the said Brown, jointly and severally, to save him harmless from the payment of all debts and liabilities due from said concern, as well as all loss, liability and damage that he has or may incur as a partner of the said Gillan. We jointly and severally guarantee that the said Gillan shall fully satisfy and discharge all debts, dues and demands owing from the said establishment."

The different clauses of a written instrument must be construed together, whether they precede or follow; and the court must not allow to a particular expression a controlling force; but the intention must be gathered from the whole instrument, unless it is obvious the parties intended otherwise. [Bates and Hines v. The State Bank, 2 Ala. R. 451.] And such a construction shall, if practicable, be placed upon a contract as will make every clause operative. [Watt's ex'r v. Sheppard, 2 Ala. Rep. 425.] These principles of construction, when applied to the writing in question, are to my mind convincing that the obligors stipulated not only for an indemnity against *loss*, but against *liability* also; and that Gillan should pay the debts of the concern. They were then bound to extinguish the demands against the firm of Gillan & Brown within a reasonable time, and a failure to do so, subjected them to an action for a breach of their covenant. Entertaining these views, I am constrained to dissent from the opinion of my brother.