# Key et al. v. Jones, Administrator.

*Bill for Account of Advancements, Final Settlement and Distribution.*

1. *Chancery ; jurisdiction to decree account of advancements.* — A court of chancery taking jurisdiction of an administration, may, when a distribution to heirs or next of kin becomes necessary, decree an account of advancements and exercise the jurisdiction conferred by statute on the probate court.

2. *Election to retain advancements ; what does not establish.* — Verbal declarations of a distributee after the death of the intestate, that he had received a full share and would retain it and not claim any more, and proof that partial distributions were made by him, as administrator of the intestate, in which he made no claim to share, do not, of themselves, establish an election to retain advancements and waive any claim to share in the distribution.

3. *Same.* — Whether the statutory mode of making such election precludes all others is not decided ; but such election, if it can arise by matters *en pais*, must be by clear, unequivocal acts, with a full knowledge of all the circumstances and the party's rights. Mere intention to elect, casual declarations or loose conversations will not suffice, especially when not acted on to the prejudice of another.

4. *Administration account ; what no part of.* — Where the intestate's lands are sold under written agreement of the heirs, part of the price being paid in cash and the remainder in notes made payable to, and received by the heirs in payment of their respective shares, the proceeds of such sales or notes are not proper matters of the administrator's accounts, and he is not entitled to commissions thereon.

5. *Administrator, compensation of ; by what law governed.* — The administrator's compensation is governed by the law of force at the time the services were rendered and not by the law as it stood at the time of his appointment or settlement.

6. *Constitutional law.* — The " act to increase the compensation of executors, administrators, guardians, and county commissioners in Lauderdale county," approved February 19, 1865, is not obnoxious to that part of section 2, Art. IV. of the Constitution of 1865, which declares that " each law shall embrace but one subject, which shall be described in the title."

7. *Section 2704 R. C. ; to what applies.* — Section 2704 R. C. applies to a reference before the register, as well as to other proceedings in the chancery court.

8. *Same ; when party incompetent witness under.* — A party in interest is not a competent witness to prove admissions or declarations made by a decedent, or transactions had with him in his lifetime, when the purpose of the evidence is to diminish the rights of a decedent or those claiming in succession to him.

9. *Administrator ; when not liable for Confederate currency perishing on his hands.* — An administrator, exercising diligence, prudence and good faith in the acceptance of Confederate currency in payment of a debt due his intestate, should be allowed a credit for it, although the currency perishes on his hands, if he has not commingled it with his own funds or been guilty of negligence or bad faith in not paying it out.

APPEAL from Chancery Court of Lawrence.
Heard before Hon. R. S. WATKINS.

[Key v. Jones.]

This was a bill in equity filed by A. H. Jones as administrator *de bonis non* of the estate of Nathan Boddie deceased, against Boddie's heirs at law and the children of a deceased heir, James S. Boddie (upon whose estate Jones also administered), praying a settlement of the administration in chief and of the administration *de bonis non*, and an account of advancement made by the intestate in his lifetime to his heirs and distributees, and of payments made to them by the several administrators and for a final distribution. The errors assigned grow out of exceptions to the report of the register stating accounts. These exceptions were overruled, and a final decree rendered confirming the report and decreeing a settlement and distribution on the basis thereof.

The material facts of the case may be stated as follows: Nathan V. Boddie died intestate in 1861, leaving a large estate consisting of lands, slaves, and other personal property. Two of his sons, James S. and Nathan V. were appointed and qualified as joint administrators, giving a joint bond. They returned an inventory and appraisment of the estate, and obtained an order to divide the slaves among the heirs and to sell the perishable property, which was done on 29th January, 1862, and duly reported to, and confirmed by the probate court. Owing to the operation of the armies during the late war, no record of these orders was preserved, but afterwards, on the 29th of January, 1863, a decree was entered *nunc pro tunc* confirming the action of the administrators in the premises.

In the petition for the order of distribution of the slaves, which was dated January 20th, 1862, and signed by both the administrators, James and Nathan Boddie, it is stated that the following named persons, giving the names of the heirs, are the heirs and entitled to share in the distribution, " except one of your petitioners, James S. Boddie, who declines a participation in said slaves."

On the 27th of February, 1862, Nathan V. Boddie resigned, and James S. was continued in the administration as sole administrator. He made an annual settlement on the 23d of March, 1863, on which settlement a balance of $6,974.39 was due the estate. In 1863 he obtained an order to rent the lands and to sell some cotton, and on the 25th of November, 1865, made an annual settlement on which a decree was rendered in his favor for $406.93. About the first of December of that year, in pursuance of a written agreement of the heirs, all of whom were then of age, except one who has since ratified the agreement, James V. sold the lands belonging to the estate, and reported the sale to the probate court which duly confirmed the same. James V. continued in the administration until his death in August, 1866. On the 16th of September of that

year, appellee, Jones, was duly appointed administrator *de bonis non* of the estate of Nathan Boddie, and also administrator of the estate of said James, and duly qualified under both appointments.

It is unnecessary, in the view which the court took of this cause, to notice in detail the agreement made between the heirs for a sale of the lands, nor to a subsequent agreement between them by which it was agreed to make certain deductions from the notes of the purchasers. The lands were sold for one third cash, and the remainder of the purchase-money payable in equal instalments in one and two years. The heirs divided the cash payment among them in proportion to their respective interests, and the purchasers' notes were made payable to and accepted by each of the heirs for his or their share of the deferred payments, some of the heirs becoming purchasers at the sale.

On the reference before the register, several of the distributees were examined, against the objection of the representative of James S. Boddie, to prove verbal declarations made by him in his life-time, for the purpose of showing an election to retain advancements and renounce all claim to share in the distribution. It seems from the testimony that before Nathan Boddie's death, he had put James in possession of a plantation called the " Donelson place," together with a number of slaves to work it, and James was for some time under the impression that he was entitled to retain the plantation, as well as the negroes. During this period, in the year 1862, he made declarations to the effect that he believed " he had a full share, and would hold his hand." He received no deed to the " Donelson place," and being advised that he could not retain it, said he would have his property valued and go into a division with the other heirs. Other similar declarations were proved. About this time he sold some cotton belonging to the estate, out of which he retained an heir's share, but before this he had sold another lot of cotton the whole proceeds of which he divided equally among the other heirs, saying that " the law must decide " as to his share, and " after finding out that he could not hold the Donelson place," paid rent for it.

In the register's report the land sale was introduced into the accounts of the administration, and Nathan V. Boddie was charged with $5,971.25 purchase-money of land bought at the sale, made by agreement of the heirs, and also charged with the price of 24 acres of land in the tract purchased for which he had not paid or given notes. He excepted to these items of the report, but his objection was overruled.

The register also allowed James S. Boddie's administrator commissions on the amount of the sale of the lands, and refused

to charge him for the purchase-money of the lands at the original price at which they were sold, but did charge him the amount to which the heirs agreed the price should be reduced.   The allowance of these commissions was excepted to, but the chancellor overruled the objection, as also an exception to the refusal to charge the administrator with the full amount of the purchase-money of the lands.   An account was taken of the advancements made to James S., and, on account being taken of them, he was allowed to share in the distribution of personal assets.   This forms the subject of an exception to the report, which was overruled.

The register found that there was a balance due James S. Boddie on a settlement of his administration, and computed interest thereon to the final distribution. , Exception on this point was taken but overruled by the chancellor.   This balance originated not from disbursements in paying debts and expenses, but from overpayments to the distributees.

An exception to the allowance of commissions to the administrators on the appraised value of the property distributed, as provided by the act of December 7, 1861, now § 2162, R. C., was overruled, as also an exception to the allowance to the administrator for services rendered after the 19th of February, 1867, at the rate prescribed by that act.

The chancellor overruled an exception by Nathan V. Boddie to the charge against him of $1,200 Confederate money, received from one Oates, as a payment on his distributive share. The facts in regard to this item are fully set forth in the opinion, and need not be here repeated.

The various rulings of the chancellor, in overruling the exceptions to the register's report, are now assigned for error.

WADE KEYES and R. O. PICKETT, for appellants. — 1. The proceeds of sale of the lands should not have entered into the administrator's account.   The sale was not ordered or made in pursuance of any statutory power of the probate court, and the court obtained no jurisdiction whatever over the proceeds. The administrator did not act *virtute officii*, but merely as the agent of the heirs.

2. " A payment, a partial distribution, or a gift, made voluntarily and without any mistake of fact, is binding and irrevocable." 1 Story, Eq. § 111 *et seq.*   James Boddie is clearly shown to have made distribution of assets of the estate voluntarily, without any mistake of fact, and with the purpose and intent to abandon, and with an actual abandonment of all right as a distributee to such assets.   This bars him, independent of the doctrine of election, advancement, and *hotchpot.*

3. Nathan Boddie, upon the testimony, should not have been

VOL. IV.                 16

[*Key v. Jones.*]

charged with the $1,200 received from Oates. He never received it as an advancement. If he took it as administrator, the circumstances show the diligence and *bona fides* of the transaction. The ordinary rules protecting trustees should shield him, if he is sought to be made liable for his agency in collecting it.

4. The act of December 7, 1861, changing the compensation of administrators, did not have the force and effect of law until reënacted in the Code, and the services were performed long before that date. 43 Ala. 488; *Reynolds* v. *Taylor*, 43 Ala. 420. The "act to increase the compensation of executors, administrators, &c., approved February 19, 1867, violates the Constitution of 1865. It contains more than "one subject." Each of the different classes of officers mentioned constitutes a different subject.

5. The administrator is not entitled to interest on the balance due him originating from overpayment to distributees, even when the distributee can be compelled to refund, unless the court has in its control an interest bearing fund belonging to the distributee. 2 Williams on Executors, 1245.

O'NEAL & O'NEAL and W. B. WOOD, *contra.* — 1. The testimony clearly shows that James Boddie made no deliberate election. His declarations, relied on to prove it, were made under a mistake as to his right to retain the Donelson place, as well as the personal property. When he was advised of the mistake, he manifested an unmistakable intent to share in the distribution. He could not then be held to a full knowledge of the condition of the estate, and there is no proof to show that he actually knew the facts which would enable him to make a deliberate and intelligent election. He declined participation in slaves alone, when laboring under a mistake as to his rights. The facts do not show an election. 2 Yates, 302; 17 S. & R. 25; 2 Green (Ch.), 510; 1 Leading Cases in Equity, 237; 7 Dana, 6; 2 Richardson Equity, 237. The heirs have not been prejudiced by his acts, and the election, if actually made, under these circumstances, is not conclusive. 1 Vesey Sr. 400; 1 P. Wms. 365; 12 Vesey, 136; 13 Cal. 133; 2 Metcalf, 47; 4 Jones Eq. 178.

2. The allowance of interest to James Boddie's administrator for the balance found due on settlement was proper. 22 Ala. 343; *Ex parte Sallie Reavis*, June term, 1874; 7 Ala. 217.

3. The commissions allowed were governed by the law of force when the services were rendered. R. C. §§ 2161-2. The act of February 19, 1867, is clearly constitutional. The one

VOL. LII.

subject there is much more definite than that passed on in *Robinson* v. *Falconer*, 46 Ala. 340.

4. The probate court confirmed the sale of the lands, and the proceeds of the sales was therefore a proper item in the administration account.

BRICKELL, C. J. — The first exception we propose to notice is one taken by all the appellants, viz. : that James S. Boddie, a son of the intestate, was permitted, on accounting for the advancements made him by his father in his life, to share in the distribution of the personal assets. The exceptants insist he had prior to the distribution elected to retain the advancements made him, and abandon all claim to any other or further share in the personal assets. The election is supposed to have been manifested by his verbal declarations, after the death of the intestate, that he had received a full share, and would retain it, and not claim any more ; that partial distributions were made by him, as administrator of the intestate, in which he made no claim to share.

The Code provides the mode of bringing together all the personal estate of an intestate, including advancements he has made to his children, in order to a division according to the statute of distributions.' Jurisdiction of controversies as to advancements is devolved on the probate court. The personal representative, or any party interested in the distribution, alleging on oath that an advancement has been made, can procure a citation to the heir or distributee alleged to have been advanced, requiring him to answer what, if any, advancements have been made him. If he answers, an issue can be formed on the answer, and judgment rendered declaring the amount and value of such advancement. If he fails to answer, it is *primâ facie* evidence he has received his " full proportionate part of the estate." R. C. §§ 1904–1908. Thus a mode of ascertaining judicially the amount and value of such advancements, and a mode in which the heir or distributee may judicially manifest an election to retain the advancement and abandon all claim to a further distribution, is established. True, the statutes confer the jurisdiction on courts of probate only ; but when a court of equity takes jurisdiction of an administration, it applies the law relating to administrations in the court of probate, proceeding according to its own practice. *Taliaferro* v. *Brown*, 11 Ala. 702 ; *Hall* v. *Wilson*, 14 Ala. 295 ; *Wilson* v. *Crow*, 17 Ala. 59. When, therefore, a court of chancery has taken jurisdiction of an administration, and a distribution to the heirs or next of kin becomes necessary, it may decree an account of advancements, and exercise the jurisdiction conferred by statute on courts of probate.

[Key v. Jones.]

A mode of requiring heirs and distributees to elect whether they will account for advancements they have received, or retain such advancements and waive all claim to further distribution, being thus provided by law, we do not say the election cannot be made by matter *en pais;* but if it can, it must be by plain and unequivocal acts, under a full knowledge of all the circumstances and of the party's rights. 1 Lead. Cases in Equity, 419; *Reaves* v. *Garrett,* 34 Ala. 558. A bare acquiescence, without a full and deliberate and intelligent choice, will not be an election. A mere intention to elect will not suffice ; nor are loose conversations or casual declarations, expressive of such intention, to be weighed in determining whether an election has been made. *Reaves* v. *Garrett, supra.* Applying these principles to the facts found in the record, will not authorize a court to declare that James S. Boddie had made an election, which is conclusive on him, not to account for advancements made him, and share in the final distribution of the personal assets. When the declarations were made and the acts done, which are claimed operate an election, the time had not arrived when an election could have been compelled. No step had been taken to compel an account and ascertainment of advancements. He had not the means of making an intelligent election. No account had been furnished him of the advancements to his co-heirs and co-distributees. He may have had a general knowledge of such advancements, but he had not that knowledge which would have enabled him to make " a judicious and discriminating choice." His acts and declarations worked no injury to his co-heirs and co-distributees. On them they never acted, so that it would be unjust to them for him now to claim distribution. The equitable doctrine of election between conflicting and inconsistent rights is not intended to work forfeitures, but to promote equality and subserve justice. Therefore, compensation is often decreed when thereby complete justice can be done. 1 Lead. Cases in Eq. 401. The chancellor correctly ruled that the personal representative of James S. Boddie was, on accounting for advancements, entitled to share in the distribution.

The lands of the intestate were sold, under an agreement in writing between the heirs, for one third cash and the remainder of the purchase-money payable in equal instalments at one and two years. The cash payment was divided among the heirs, in the proportion of their respective interests in the lands, and the notes of the purchasers were made payable to and accepted by each heir for his or her respective shares of the deferred payments. The sale was reported to the court of probate, as had been previously reported the fact of the agreement for sale between the heirs. The court of probate had

[Key v. Jones.]

no jurisdiction over this sale. The report made to it was an idle ceremony, and any action thereon by that court was a mere nullity, entitled to no consideration. The purchase-money is introduced into the settlement of the administrations, and a grave controversy entered into as to whether the heirs, subsequent to the sale, had agreed to make certain deductions from the notes of the purchasers. The whole controversy is foreign to this suit, and it has served no purpose except to complicate the accounts, obscure the questions really at issue, and swell the record. The proceeds of the sales of the lands were in no sense assets over which the administrator in chief, or administrator *de bonis non*, had any power *virtute officii*. For them, in their representative capacity, neither they nor their sureties were responsible. It is only with money or property which an administrator is entitled to receive in his representative capacity that an account should be taken in settling his administration. *Pettit* v. *Pettit*, 32 Ala. 288 ; *Smith* v. *Smith*, 13 Ala. 329 ; *Ashurst* v. *Ashurst*, Ib. 753. There may be cases in which he wrongfully receives moneys, to which he is not entitled in his representative capacity ; yet a court of equity will, on the ratification of his illegal act by the parties in interest, charge him with such moneys. This case does not belong to that class of cases. The chancellor, therefore, erred in overruling the exceptions to the report of the register because these sales had been introduced into the accounts of the administration, and because appellant Nathan V. Boddie was charged with $5,971.25, purchase of homestead tract. No one of the heirs should be charged in this suit with their purchases of real estate. That is a private individual transaction disconnected from the administration.

The chancellor further erred in overruling the exception of the appellant Nathan V. to the report because he was charged therein with $305.20, purporting to be for a quantity of land in the tract he purchased, in excess of the quantity for which he had given notes or made payments. He may be and is doubtless liable for this excess, but not in this suit.

The chancellor erred in overruling the exception because of the allowance to the administrator James S. Boddie of commissions on the sales of the lands. Commissions are compensation for services rendered by an administrator in his representative capacity, not for services he may render in performing an agreement made with and between the heirs.

The chancellor did not err in overruling the exception to the report because the administrator was not charged with a larger sum as proceeds of sales of lands. He should not have been charged at all.

The register ascertained that there was a balance due the

administrator James S. Boddie on a settlement of his adminis-
tration, and he computed interest thereon to the final distribu-
tion. This forms the subject of an exception to the register's
report, which the chancellor overruled. This balance did not
arise from the administrator exceeding the assets in his hands,
in paying debts and expenses of administration, but it origi-
nated from overpayments to the several distributees. That
the administrator is entitled to interest on this balance we do
not doubt. Interest with us attaches as an incident to any
moneyed debt or demand, and is compensation for the forbear-
ance of such debt. *Hollingsworth* v. *Hammond*, 30 Ala. 668 ;
*Whitworth* v. *Hart*, 22 Ala. 343. But he should not have
been allowed this balance and the interest thereon as a credit
in his general account. Each distributee should have been
charged with so much of said balance as was an overpayment
to him, and with interest thereon. The exception should
therefore have been sustained.

In February, 1862, the administrator, under orders of the
court of probate, made division and distribution of the slaves
of the intestate. An exception was reserved to the report of
the register, allowing the administrator commissions on the
appraised value of the slaves. The exception was properly
overruled. The compensation of an administrator or executor
is dependent on the law in force when the services are ren-
dered, not on the law existing when he is appointed or when
he makes settlement. *Gould* v. *Hayes*, 19 Ala. 438. The act
of December 7, 1861, now § 2162 of the Revised Code,
allows the administrator the same commissions on the value
of personal property distributed as is allowed him on disburse-
ments.

On the 19th February, 1867, the general assembly passed
an act entitled " An act to increase the compensation of exec-
utors, administrators, guardians, and county commissioners, in
Lauderdale county." For services rendered after the passage
of this statute the register allowed the rate of compensation it
prescribes, to which an exception was taken and overruled.
The exception rests mainly on the suggestion that the act vio-
lates the clause of the second section of the 4th article of the
Constitution of 1865, providing " each law shall embrace but
one subject, which shall be described in the title." The act is
not liable to the objection. This constitutional provision re-
ceived an interpretation in *Ex parte Pollard* (40 Ala. 77),
which has since been accepted as authoritative and conclusive.
The object of the provision, the court declared, was to prevent
deception by the inclusion in a bill of matter incongruous with
the title ; to prevent the misleading of the general assembly,
and the community, by the introduction into one act of matters

foreign to each other. No part of this statute is not expressed in the title, and the matters to which it refers are not so alien to each' other that they may not properly have been embraced in one act.

Against the objection of his administrator one or more of the distributees were permitted to testify to declarations made by James S. Boddie, in his life, tending to show his election to retain the advancements made him and renounce all claim to further distribution. As we have already declared, these declarations, if properly proved, would not amount to an election precluding his personal representative from claiming distribution, it would seem unnecessary to pass on this objection. But as it may arise, in the further progress of the cause, in various forms, we deem it proper to say, that § 2704 of the Code applies fully to proceedings in chancery, whether on a hearing before the chancellor or on a reference to the register. *Kirksey* v. *Kirksey*, 41 Ala. 626. When the purpose of evidence is to diminish the rights of a decedent, or of those claiming in succession to him, by declarations or admissions made by him, or transactions had with him, in his life, no party in interest is a competent witness to prove such admissions, declarations, or transactions.

It appears that at the death of intestate one Oates was indebted to him by open account. Of the amount of this indebtedness the administrator had no evidence, and was desirous of procuring some admission and recognition of it from Oates. With this view, the appellant Nathan V., who was then co-administrator with James S. Boddie, visited Oates, having been instructed by James S. not to receive from him Confederate treasury notes. Oates representing his inability to pay otherwise, prevailed on Nathan to accept twelve hundred dollars in Confederate treasury notes. James S. refused to recognize this payment, unless Nathan would accept it as a payment on his distributive share. Nathan consenting, he received from him the whole amount of the twelve hundred dollars. Subsequently Nathan received from him two hundred dollars of the sum, and used it in the purchase of a horse. What became of the remainder does not appear. It may have been used by James S., or mingled with his own moneys, so that its identity as assets was wholly lost. After the close of the war, James S. prevailed on Nathan to give him a receipt for the twelve hundred dollars, on the representation that he would otherwise be chargeable with and lose it. Oates at the close of the war was bankrupt. With this twelve hundred dollars Nathan was charged as a payment on account of his distributive share, to which he excepted, and the chancellor overruled the exception.

No fact or circumstance appears from which any want of the diligence or good faith an administrator should observe in the collection of the debts due his intestate can be imputed to the administrator in the reception of this sum of Confederate treasury notes. It does not appear to what extent they were then depreciated, nor that they were not then generally received in satisfaction of debts. The administrator declared he could not use them in paying debts; but the estate was solvent, and it does not appear that the distributees would not have received them, and could not have used them. On the contrary, it appears that one of them did subsequently receive and use in the purchase of a horse two hundred dollars of the identical notes. If the administrator had, under the facts stated in the record, received these notes, and had not or could not have used them, but retained and returned them on his final settlement, he should have been allowed a credit therefor. It is only when an administrator is guilty of negligence or want of good faith that he should be charged with a failure to collect debts, or with the depreciation of a currency in which he makes collections.

We can perceive no substantial reason for charging Nathan V. with the full amount of these notes. His receipt is not conclusive, but is open to inquiry and explanation. The fact appears to be, that he never applied but two hundred dollars of them to his own benefit. The remainder was in the possession of the administrator James S., and for aught that is shown, may have been used by him or applied to his own purposes. The chancellor therefore erred in overruling this exception. Nathan V., should be charged with only two hundred dollars, the sum he received from the administrator. The administrator James S. should be charged with the remaining one thousand dollars, unless it is shown he did not use them, or commingle them with his own funds, and is not guilty of any want of diligence in failing to apply them either in the payment of debts, or to the benefit of the distributees.

Originally, James S. and Nathan V. were appointed joint administrators, on the 19th December, 1861. On the 27th February, 1862, Nathan resigned. He claimed to share equally in the compensation for services rendered prior to his resignation. Whether he is so entitled, the facts in the record do not enable us to declare. To joint administrators who are equally active in the performance of their duties, the compensation should be joint. How far Nathan participated in the administration, what services, if any, he rendered, whether his administration was not rather formal and nominal, the active duties devolving on his co-administrator, cannot be ascertained from this record. These are material inquiries in deter-

mining what, if any, compensation should be allowed him. In apportioning compensation between joint administrators, the services actually rendered by each must be considered.

We have passed on all the assignments of error, and the result is the decree must be reversed and the cause remanded for further proceedings, not inconsistent with this opinion.