## LAMAR vs. GUNTER.

[REAL ACTION IN NATURE OF EJECTMENT.]

1. *Lien of attachment destroyed by insolvency.*—When a defendant in attachment dies, and his estate is regularly reported and decreed insolvent, the lien of the attachment is thereby destroyed.

2. *Validity of chancery decree for sale of attached lands, without proper pleadings, and without notice to heirs.*—Where a bill in equity is filed to compel a settlement of a guardian's accounts, and to charge a surety on his official bond with the amount that may be found due from him; and an attachment is also prayed against the surety, which is issued, and levied on his land; and, the surety having died, his estate is regularly reported and decreed insolvent; and his administrator pleads the decree of insolvency in the chancery court; and the chancellor proceeds, without further pleadings in the cause, to settle and distribute his estate among the several creditors who may come in and prove their debts, and orders a sale of the attached land,—such decree of sale is void, for want of jurisdiction, as against the heirs, who are not shown to have appeared, or to have been notified of the proceedings.

APPEAL from the Circuit Court of Marshall.
Tried before the HON. WM. M. BROOKS.

THIS action was brought by Daniel Gunter and others, heirs-at-law of Edward Gunter, deceased, against James Lamar, and was commenced on the 22d April, 1856. The land in controversy was a tract containing six hundred and forty acres, and was reserved to Edward Gunter, the plaintiffs' ancestor, (who was a Cherokee Indian,) under the treaty concluded at Washington, on the 27th February, 1819, between the Cherokee Indians and the United States.

Said Edward Gunter removed, with his tribe, to the west of the Mississippi river, in the fall of 1838, and there died, in April, 1842; and it was admitted, on the trial, that the plaintiffs were his heirs-at-law. The defendant purchased the land, at a sale made by the register and master in chancery, under a decree of the chancery court, on the 20th February, 1847; and the principal question in the case was as to the validity of that decree and sale.

A certified transcript of the proceedings had in the chancery suit, the correctness of which was admitted, was offered in evidence by the defendant. The bill in that case, as shown by said transcript, was filed on 28th August, 1838, by the infant children of Evan Nicholson, deceased, suing by James Lamar as their next friend, against Lewis Cunningham, (who was the administrator of their deceased father,) John R. Nicholson, (who was their guardian,) Edward Gunter and N. R. Harlan, (who were the sureties of said Nicholson on his official bond as such guardian,) and the other distributees of the estate of said Evan Nicholson. It alleged, that said Evan Nicholson died, intestate, in 1834; that Lewis Cunningham was duly appointed administrator of his estate, and had never settled his administration; that said John R. Nicholson was regularly appointed guardian of the complainants, gave bond, with said Edward Gunter and Harlan as his sureties, and received from said Cunningham moneys and negroes belonging to his wards; that said Nicholson afterwards left the State, without settling his guardianship, and removed to parts unknown; that Harlan had also absconded; and that said Gunter was selling off his property, with the intention of removing from the State. The prayer of the bill was for writs of attachment and *ne exeat* against Gunter; "that said Cunningham distribute the balance of said estate remaining in his hands; that accounts be taken, showing how much of complainants' property has come to the possession of said John R. Nicholson; that the sum so ascertained be paid by said Gunter, as the surety on said bond, and for other and further relief," &c.

Writs of attachment and *ne exeat* were issued against Gunter according to the prayer of the bill. The attach-

ment was levied on the land in controversy, on the 19th September, 1838, and the writ of *ne exeat* was executed on the same day. At the regular term of the court held on the fourth Monday in September, 1838, as the minute-entry recites, "came the parties, by their solicitors, and the defendant moved the court to dismiss the bill"; the cause being entitled in the margin, "William Nicholson and others *v.* John R. Nicholson." In December, 1839, an amended bill was filed, by leave of the court, in which it was alleged, that said John R. Nicholson and said Harlan had no property in this State, except their respective distributive interests in the estate of said Evan Nicholson, then in the hands of said Cunningham as administrator; and that said Gunter had removed from the State. An answer was filed by Cunningham, in May, 1840, stating what amount of property he had remaining in his hands, and how much he had paid over to said guardian; and a formal answer was filed by the guardian *ad litem* of the infant distributees. In June, 1840, decrees *pro confesso* were regularly entered against Gunter and John R. Nicholson, on publication against them as non-residents. At the December term, 1841, "by consent of the parties," an order was made for the publication of the testimony, and for a reference to the master to state the guardian's accounts. At the May term, 1843, "by consent," J. G. Garrett, as administrator of Edward Gunter, was made a party to the cause. In June, 1844, the death of John R. Nicholson was suggested, and his administrator was made a party; and on a subsequent day of the term, it was "ordered, on motion, that all matters of account arising on the bill and answers be referred to the master, reserving to the defendant J. G. Garrett, administrator of Edward Gunter, the right to answer and offer proof."

In March, 1845, an answer was filed by said Garrett, in which he alleged, that the estate of Gunter had been regularly reported and decreed insolvent by the orphans' court of Marshall county; and he insisted, "that any lien on the lands of said Gunter, which the complainants may have, is destroyed by the insolvency of said estate." On the 31st May, 1845, the master made his report under the

Lamar v. Gunter.

reference, showing a balance against the guardian, in favor of the complainants, of over sixteen thousand dollars; and the report was confirmed, without exceptions by either party. On a subsequent day of the June term, 1845, it was "ordered by the court, by consent, that James W. McClung, Silas Parsons, L. Wyeth, and all other creditors of Edward Gunter, deceased, have leave to appear, and exhibit their claims against the estate of said Elward Gunter, and to take testimony." On a subsequent day of the same term, it was "ordered by the court, by consent of the creditors, that the estate attached in this cause be sold by the register"; that the register retain in his hands the proceeds of sale, subject to the future order of the court; that the order of reference be extended, and that the register report, at the next term, the amount of debts due to the several creditors who might come in and prove their claims.

At the May term, 1846, the master made his report under the reference; and the cause being submitted, on pleadings and proof, for final decree, the chancellor (Hon. D. G. LIGON) rendered the following decree: "It is ordered, that the matters of account in this case be referred to the master, for the purpose of ascertaining the amount to which each of the creditors, whose claims have been reported upon, (including the complainants,) will be entitled out of the money arising from the sale of the premises levied upon by the attachment in this case, making a *pro-rata* distribution of said fund amongst them so soon as the same is ascertained;" also, "that the complainants recover of the defendants, as *securities* of John R. Nicholson on his bond as guardian, the sum reported by the master to be due to them, and that they have execution therefor;" also, "that the master retain the costs in this case out of the money in his hands, and, after paying the expenses of the administration of the estate of said Gunter, that he distribute the balance as hereinafter directed." At the May term, 1847, the master reported that he had sold the lands under the former order, but that the purchaser had failed to comply with the terms of the sale; and a re-sale was thereupon ordered. At the December term, 1848, the master reported

that he had sold the lands under the former order, on the 20th September, 1847, that James Lamar had become the purchaser, and had paid the purchase-money, and that he had executed a conveyance to said Lamar; also, the names of the several creditors who had proved their claims, the amount of the costs, and the *pro-rata* share of the fund in court to which each creditor was entitled; and his report was confirmed without exception.

"The above being all the evidence on the question of title, the court thereupon charged the jury, that, if they believed the evidence, they must find for the plaintiffs"; to which charge the defendant excepted, and which he now assigns as error.

ALEX. & JOHN WHITE, for appellant.—If the chancery court had jurisdiction to render the decree ordering the sale of the land, the sale is valid, and the purchaser acquired whatever title Gunter had. This would be true, if the court only had jurisdiction of the subject-matter; but it is insisted, that it had jurisdiction, not only over the subject-matter, but also over the parties, and that Gunter's heirs were not necessary or proper parties.

1. Gunter was made a defendant to the bill. The *ne exeat* was served on him, and he afterwards appeared by counsel, and defended the suit, accepting service of interrogatories, &c. There can be no question as to the jurisdiction over him.

2. The court acquired jurisdiction of the land by the levy of the attachment. The release of the land from the lien followed only upon the insolvency of the estate, and its being pleaded by the administrator; and such release of the lien did not divest the jurisdiction of the court over the land.

3. When the insolvency of Gunter's estate was pleaded by the administrator, it was competent for the court to take to itself the entire administration, dispose of the land, and adjust the claims of creditors, in conformity to the mode of proceeding in the orphans' court. The statutory jurisdiction conferred on the orphans' court, in the settlement of insolvent estates, is borrowed from the chancery

court, and does not divest the original jurisdiction of the latter court.—Story's Equity, vol. 1, §§ 544, 546, 542; *Dement v. Boggess*, 13 Ala. 143; *Blakey v. Blakey*, 9 Ala. 391; *Wilson v. Crook*, 17 Ala. 59; *Waldron, Isley & Co. v. Simmons*, 28 Ala. 631; *Pearson v. Darrington*, 21 Ala. 169.

4. The decree of insolvency, by operation of law, divested the estate out of the heirs, and vested it in the administrator, for the benefit of the creditors.—*Fitzpatrick v. Edgar*, 5 Ala. 503; *Burk's Adm'rs v. Jones & Allen*, 13 Ala. 171; *Purdom v. McBroom*, 19 Ala. 110; *Hall v. Wilson*, 14 Ala. 298; *Long v. Easley*, 13 Ala. 244; *Taliaferro v. Brown*, 11 Ala. 710; *Wilson v. Crook*, 17 Ala. 59; *Grignon v. Astor*, 2 How. (U. S.) 338. These authorities show, also, that it was the duty of the chancery court to proceed with the cause, after the insolvency of the estate was pleaded, as nearly as possible according to the practice in the orphans' court. The heirs, then, having no interest whatever in the controversy, it was not necessary to bring them before the court.

5. The decree for the sale of the land, by analogy to proceedings in the orphans' court for the sale of realty, was *in rem.*—*Duval's Heirs v. McLosky*, 1 Ala. 709; *Duval v. P. & M. Bank*, 10 Ala. 636; *Field's Heirs v. Goldsby*, 28 Ala. 218; *Cole v. Connolly*, 16 Ala. 281; *Wyman v. Campbell*, 6 Porter, 220. Being a proceeding *in rem*, and the jurisdiction of the court having attached, the order of sale cannot be attacked collaterally on account of mere errors and irregularities.—See the cases above cited; also, *Mattheson's Heirs v. Hearin*, 29 Ala. 217; *King v. Kent's Heirs*, 29 Ala. 542; *Heydenfeldt v. Towns*, 27 Ala. 428; *Grignor v. Astor*, 2 How. (U. S.) 338; *Bustard v. Gates*, 4 Dana, 429; *Voorhies v. U. S. Bank*, 10 Peters, 474; 5 Cranch, 173; *Perkins v. Fairfield*, 11 Mass. 227; *McPherson v. Cunliff*, 11 Serg. & R. 425–30; Note to *Doe v. Oliver*, 2 Smith's L. C. 693; *Elliott v. Piersol*, 1 Peters, 340; 2 Peters, 169.

WALKER & BRICKELL, D. W. BAINE, and S. F. RICE, *contra.*

1. The attachment was a nullity. At the time it was issued, the chancery court had no power to issue such process.

An attachment of this kind did not appertain to the original powers of the court, and could only be conferred by statute.—Daniell's Ch. Pr. 519 ; *Taliaferro v. Lane*, 23 Ala. 371 ; *Stevenson v. O'Hara*, 27 Ala. 362. The only statute of force in 1838 provided, that the circuit courts, sitting in chancery, should "have power and authority to order and issue all such process as usually belonged to courts of chancery."—Aikin's Digest, 286, § 5. The authority to issue such attachments was first conferred on the chancery courts by the act of 1841.—Clay's Digest, 355, § 63. The attachment being void, the court had no jurisdiction over the land.

2. It cannot be maintained that the court, having jurisdiction of the administration and settlement of Gunter's estate, thereby acquired jurisdiction also over the land. That administration was then pending in another court, which had at least concurrrent jurisdiction. How did it get into the chancery court? The only evidence that it was ever in that court, is the fact that the chancellor made the order of sale. The argument, then, amounts to this : the court had jurisdiction to order the sale, because the administration was there pending ; and the administration was pending in that court, because it ordered the sale. The jurisdiction of a court does not attach, until a case is presented to call it into action.—*Grignor v. Astor*, 2 How. (U. S.) 338. In making the order of sale, the court evidently proceeded on the idea that the land was within its jurisdiction by virtue of the levy of the attachment.

3. Admitting that the administration was pending in the chancery court, still it does not follow that the order of sale is valid. There was no compliance with the statutory provisions governing such sales by the orphans' court. The authority of the chancery court to sell a decedent's lands for the payment of debts, is derived solely from the statute ; and the sale must be conducted in the same manner as in the orphans' court.— *Wilson v. Crook*, 17 Ala. 61. A statutory power, conferred on a court of general jurisdiction, is limited and special ; and, in the exercise of that power, its jurisdiction must affirmatively appear on the face of its proceedings.—*Foster v. Glazener*, 27 Ala. 397 ; *Gunn v. Howell*, 27 Ala. 663.

4. The order of sale cannot be supported as a proceeding *in rem*, within the meaning of the term which authorizes the court to proceed without notice to parties, and holds the whole world concluded by its judgment. Such a proceeding, in the strict sense of the term, "is where a court exercises a peculiar jurisdiction, which enables it to pronounce on the nature and qualities of a peculiar subject-matter of a public nature and interest, independently of any private party."—*Branch Bank v. Hodges*, 12 Ala. 121; 1 Greenl. Ev. § 525. In this sense, at common law, the chancery court never did act *in rem:* its proceedings were solely *in personam.*—2 Daniell's Ch. Pr. 1236; 2 Story's Eq. § 744; *Boykin v. Rains*, 28 Ala. 342; *Hunt et al. v. Acre*, 28 Ala. 580. By statute, both in England and in this country, it has authority to enforce its decrees by proceedings against the defendant's property, which are loosely called proceedings *in rem;* but these are only resorted to after a decree *in personam* has been rendered, and to enforce its execution. The effect of decrees in chancery "is not so extensive as that of decrees rendered in proceedings *in rem.*" 1 Greenl. Ev. § 551. See, also, *Watson v. Spence*, 20 Wendell, 260; *Sheldon v. Newton*, 3 Ohio St. R. 199; *Mankin v. Chandler*, 2 Brock. 125. In all chancery suits, affecting a decedent's real estate, his heirs are indispensible parties. *Kennedy v. Kennedy*, 2 Ala. 573; *Jennings v. Jenkins*, 9 Ala. 286.

The decree of sale, then, is void, if founded on the levy of the attachment, because the attachment was a nullity; if founded on the statute regulating sales by the orphans' or probate court, because the requisitions of the statute were not complied with; and if regarded as an ordinary proceeding in chancery, because the parties in interest were not before the court.

STONE, J.—The title of the appellant in this case rests on a sale made under a decree in chancery. The bill, which was the commencement of the chancery proceedings, was filed by the children of Evan Nicholson, deceased, against Edward Gunter, the father of the present appellees; and proceeded against him as surety of John R. Nich-

olson, who was their guardian. The object of the bill was to collect out of said Gunter and his effects an alleged indebtedness from John R. Nicholson, the guardian, to the complainants, his wards. The bill, among other things, prayed for an attachment against the effects of said Gunter, which was granted. Under this attachment the sheriff levied on the lands in controversy, as of the estate of the said Gunter. The lands were brought into that suit in no other way.

While that suit was pending, and before any order was made affecting the merits, Edward Gunter died; administration was taken out on his estate, and the same was reported and decreed to be insolvent by the proper orphans' court. This report and decree of insolvency were pleaded in the chancery court by the administrator, he claiming that, by virtue of the decree of insolvency, the lien of the attachment and levy was lost; and that the estate of the decedent must be equally applied to the payment of all the debts against it. No further proceedings seem to have been had in the chancery court under the pleadings in said cause; nor was there further action had in said suit, in the form of proceedings by complainants to collect from the surety of their guardian what was due to them as his wards. No new pleadings were filed in said cause, enlarging or modifying its purposes or policy; while all the after-proceedings in the chancery court, as we gather the same from the orders, decrees, and reports, give it the form of an administration and settlement of the estate of the said Edward Gunter.

[1.] We need not inquire whether the issue and levy of the attachment out of the chancery court were at the time regular. Whether regular or not, after the death of Gunter, and the report and decree of insolvency of his estate, were brought to the knowledge of the chancery court, that court, in all its subsequent action, proceeded on the conceded basis that the estate had been so decreed insolvent, and that the lien of the attachment was destroyed. That the lien created by the levy of the attachment was destroyed by the decree of insolvency, is too well settled in this State to be now an open or debatable question.—See

*Hall v. Cummings*, 3 Ala. 398 ; *Fitzpatrick v. Edgar*, 5 Ala. 503 ; *Burk v. Jones*, 13 Ala. 171 ; *Langdon v. Raiford*, 30 Ala. 238.

[2.] The lien of the attachment being gone, and there being no pleadings which sought an administration and settlement of the estate of Edward Gunter, it follows that, in all the chancery court did after that time, we must deal with this record as if the several orders and decrees of the court had been pronounced without any pleadings whatever in the cause, or recitals showing the parties to be before the court. This conclusion is supported by the following axiomatic propositions : *First*, a judgment between A and B can derive no support from pleadings between C and D ; and *second*, a judgment establishing the ownership of one piece of property, is not upheld by pleadings which assert a claim to another piece of property.

It is proper that we state, before entering upon the discussion of this question, that the present record furnishes no evidence, either by recitals or otherwise, that the appellees were before the court, or had any knowledge of the proceedings. Nor, indeed, were their names anywhere mentioned in the record. Hence, what we say is not to be understood as asserting that the same rule would apply, if the record recited that the parties appeared, or that they were present.

In the case of *Shriver's Lessee v. Lynn*, (2 How. U. S. 60,) the supreme court of the United States said: "The chancellor is authorized to proceed in a summary mode, under the statute, for the sale of land, in the predicament of the above tract, after the decease of the devisee without heirs. But he can only proceed on the application of persons interested. Here [there] was no such application for the sale of this land. The sale being without authority, the ratification of it by the court must be considered as having been given inadvertently. If given deliberately, and on a full examination of all the facts, still it must be regarded as an unauthorized proceeding. There was no case before the court—nothing on which its judgment could rest."

In the State of Ohio, the doctrine of presumptions in favor of jurisdiction has been carried as far, perhaps, as in

any other State. In that State, speaking of a statute which was very comprehensive in its provisions, the court said: "Previous to 1824, proceedings to subject the real estate of a decedent to sale for the satisfaction of his debt, were *ex-parte*—were purely and strictly *in rem*. Nothing further was necessary to give the probate court jurisdiction than to present a petition."—See *Robb v. Lessee of Irwin*, 15 Ohio Rep. 698. In a later case the court said: "The power to hear and determine a cause is jurisdiction; and it is *coram judice* whenever a case is presented which brings this power into action. But, before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or thing sought to be charged or affected; that such complaint has actually been preferred; and that such person or thing has been properly brought before the tribunal, to answer the charge therein contained."—*Sheldon v. Newton*, 3 Ohio St. R. 499. See, also, *U. S. v. Arredondo*, 6 Peters, 709; *Rhode Island v. Massachusetts*, 12 Peters, 718; *Watson v. Spence*, 20 Wend. 265; *Shœfer v. Gates and Wife*, 2 B. Mon. 455; *Hunt's Heirs v. Ellison's Heirs*, 32 Ala. 173–200.

It is contended that, the proceedings we are considering being *in rem*, the court was in possession of the *res*, and therefore the decree, though irregular, is not void. It is, perhaps, a sufficient answer to this argument, that the court never had possession of the *res*, under any proceeding with which the present decree can connect itself. Moreover, the lien of the levy being destroyed by the decree of insolvency pronounced in the matter of Gunter's estate, the court had lost all power over the land growing out of that levy.

But, conceding that the order for the sale of the land was a proceeding *quasi in rem*—the view which the authorities force us to take (*Wyman v. Campbell*, 6 Porter, 219; *Matheson v. Hearin*, 29 Ala. 210; *Field v. Goldsby*, 28 Ala. 218)—still this record falls far short of making a case which can stand the test of even collateral scrutiny. Mr. Greenleaf says, "It must appear that there have been regular proceedings to found the judgment or decree; and

that the parties in interest *in rem* have had notice, or an opportunity to appear and defend their interests, either personally, or by their proper representatives, before it was pronounced; for the common justice of all nations requires that no condemnation should be pronounced, before the party has an opportunity to be heard.",—1 Greenl. Ev. § 541.   See, also, *Bradstreet v. Neptune Ins. Co.*, 3 Sumner, 606; *Woodruff v. Taylor*, 20 Ver. 73; *Mánkin v. Chandler*, 2 Brock. 126-7; *Green v. Shaver*, 3 Humph. 139; *Pickens v. Nance*, 6 Humph. 151; *Grier v. Campbell*, 21 Ala. 331; *Thompson v. Allen*, 4 S. & P. 184.

Without intending to declare what would be our opinion, if this were a proceeding *in personam*, we feel no hesitation in announcing that there was a total want of jurisdiction in the chancery court to order a sale of the land which is the subject of this suit.   The result is, that the decree is void, and the sale under it conferred no title on the purchaser.

Judgment affirmed.