# Lewis *v.* Allred and Wife.

*Bill in Equity to Compel Guardian to an Account and Settlement.*

1. *Final settlement of guardianship; when decree of Probate Court operates a bar.*—The decree of a court of probate rendered on the final settlement of a guardianship—if the court has jurisdiction—in the absence of circumstances which would invalidate any domestic judgment or decree, is final and conclusive, and operates as a bar to any future proceeding in that court, or in a court of chancery, to compel such settlement.

2. *Decrees of Probate Court; dignity of.—Essential element of every judgment or decree.*—The decrees of the Probate Court, within the pale of its jurisdiction, are of the same dignity, finality, and conclusiveness as the decrees of other courts of record; but the essential element of every judgment or decree is that the court shall have jurisdiction of the subject-matter and of the parties, and that it shall be rendered at a time and place when and where the court may proceed to judgment. A want of jurisdiction is fatal to a judgment or decree, whether assailed directly or collaterally.

[Lewis v. Allred and Wife.]

3. *Final settlement of guardianship; jurisdiction of Probate Court purely statutory.*—The jurisdiction of the court of probate in the matter of the final settlement of the guardianship of minors, is limited and statutory; and without statutes creating it, a court of equity alone would have inherent, original jurisdiction in such matters.

4. *Sentences of courts of limited and special jurisdiction; what record must disclose.*—It is essential to the validity of courts exercising a limited and special jurisdiction, that the record should disclose the material facts on which the jurisdiction depends, else the sentence is a nullity.

5. *Final settlement of guardianship; when Probate Court without jurisdiction, and decree of, not a bar.*—The court of probate has no jurisdiction to proceed to a final settlement of the guardianship of a female ward, while the relation of guardian continues, the ward being a minor and unmarried; and, consequently, such a settlement can not operate a bar to a bill for account and final settlement filed by the ward after her marriage. (Refusing to concur in the different conclusion attained in *Spencer v. Spencer*, 50 Ala. 445.)

6. *Bill to compel settlement of guardian, who is also trustee; account ordered of trust funds; election to hold as guardian, when can not be retracted.*—Where a bill is filed against a guardian, to compel a settlement of his accounts as such, an account is properly ordered of funds which the guardian held as trustee of the ward, where the guardian by some positive act—such as blending the two accounts as guardian and trustee, in a settlement with the Probate Court—elects to hold as guardian; and having made such election, the guardian can not, as against the ward, retract such election, to defeat an accounting for such funds, on bill to call him to account as guardian, and thus compel the ward to a separate suit as to the trust funds.

7. *Guardianship during war; liability for receiving Confederate money; burden on guardian to show diligence and good faith.*—A guardian who, during the war, exercising reasonable diligence, in good faith, received Confederate currency in payment of debts due the ward, will be relieved from liability, if, without fault on his part, the currency perished on his hands; but the *onus* is on the guardian to show such diligence and good faith—that he did not commingle the funds with his own, or use them for his own purposes.

APPEAL from the Chancery Court of Russell.

Heard before the Hon. N. S. GRAHAM.

Bill was filed on the 11th of October, 1870, by Lillia D. Allred — aged eighteen — whose maiden name was Lillia Dawson—and her husband, W. C. Allred, against Owen L. Lewis, appellant. It states that complainants intermarried on the 22d of October, 1869; that complainant's mother, Georgia A. Dawson, died in May, 1861, leaving all her property—valued at $10,000—by will to said Lillia. Defendant, Lewis, qualified as executor in July, 1861, and took possession of all of Mrs. Dawson's property. On the 22d of June, 1864, said Lewis was appointed guardian of said Lillia. On the 11th of July he made a final settlement of the estate of said Mrs. Dawson. On the 24th of June, 1864, he filed an inventory of the estate of said Lillia. On the 11th of September, 1865, he made a settlement of the estate of said Lillia, alleged to be false in several particulars, especially in reporting that a balance of $2,539, was in Confederate

[Lewis v. Allred and Wife.]

money. On the 14th of June, 1869, he made a final settlement, as guardian, of his ward's estate. In addition to the property above mentioned, Lewis received money and property from one Nolan D. Lewis, the grandfather of said Lillia.

The bill prays for an account and settlement by said Lewis as guardian; to set aside settlements made, and for general relief.

There was a decree of reference directing an account of the money received by Lewis, not only as guardian, but also what he received as trustee of said Lillia. It is now prayed by appellant that this decree should not have been rendered, which he assigns as error. The final decree, and exceptions to the register's report, which were overruled, are also assigned as error.

LYMAN W. MARTIN, for appellant.

G. D. & G. W. HOOPER, contra.

BRICKELL, C. J.—1. The bill was filed by the appellees to compel the appellant to an account and settlement, as guardian of the estate of the appellee, Lillia G. The appellant relied as a bar, on a settlement of the guardianship, purporting to be final, made by him in the court of probate from which he derived his appointment, on the 14th June, 1869, while the ward was discovert, and in minority. The settlement was not preceded or accompanied by a revocation of the letters of guardianship. A decree of the court of probate rendered on the final settlement of a guardianship, if the court has jurisdiction, in the absence of circumstances which would invalidate any domestic judgment or decree, is final and conclusive, operating a bar to any future proceeding in that court to compel such settlement, or to a suit in a court of equity for that purpose.

2. The decrees of the court of probate within the pale of its jurisdiction, are of the same dignity, finality and conclusiveness, as the decrees of other courts of record. But the essential element of every judgment or decree, is that the court shall have jurisdiction of the subject-matter, and of the parties, and that it shall be rendered at a time and place, when and where, the court may lawfully proceed to judgment. A want of jurisdiction, is fatal to the validity of the judgment or decree, whether it is assailed directly or collate-

rally.—*Wightman v. Karsner*, 20 Ala. 446; *Lamar v. Commissioners Court*, 21 Ala. 772; *Lamar v. Gunter*, 39 Ala. 324.

3. The jurisdiction of the court of probate, in the matter of the final settlement of the guardianship of minors, is limited and statutory. It is not derived from the common law nor from the constitution. If legislation had not called it into existence, it could not be attributed to the court; and a court of equity alone, would have inherent, original jurisdiction, to entertain proceedings for, and pronounce decrees on such settlements.

4. The current of decisions, from the earliest records of this court to this day, has been, that it is essential to the validity of the sentences of courts exercising a limited and special jurisdiction, that the record must disclose the material facts on which the jurisdiction depends. If these facts do not exist, the sentence of the court is a nullity. It is to sentences of the court of probate, under its present, and under its former designation of *Orphans' Court*, the principle has been most often applied.

5. The statute of force when this settlement was made, and on which the jurisdiction of the court of probate depends, reads: " Upon the ward coming of age, or, if a female, upon her marriage, or upon the removal of the guardian, he must make final settlement," &c. There is no other warrant for the exercise of the jurisdiction. The termination of the relation, of the authority and duty of the guardian, either by the removal of the disability of infancy, or the revocation of the letters of guardianship, or the marriage of a ward, if a female, which of itself, if lawful, supersedes the guardianship, because the authority and duty of the guardian, is inconsistent with the higher authority and duty of the husband, is the fact on which depends the jurisdiction of the court to pronounce a final decree, on a final settlement of the accounts of the guardianship. If no one of these events has happened, whatever may be the state of the accounts of the guardianship, the relation of guardian and ward continues. The fortune of the ward may have been small and properly expended; there are other duties than the management of the ward's estate which devolve on the guardian, and which he is bound to perform. No other appointment of guardian can be made until there is a legal termination of the appointment conferred on him. In the present case, if after the settlement, the ward had acquired an estate, real or personal, it would have been the duty of the guardian arising from original appointment, and he would have had full authority

[Lewis v. Allred and Wife.]

to receive and manage it as if the settlement had not been made. The sureties on his original bond would have been bound for his fidelity in reference to such estate, as they were bound in reference to the estate of the ward at the time of the appointment. A final settlement in reference to such estate, it would have been within the jurisdiction of the court of probate to compel on the happening of either of the events mentioned in the statute. The records of the court would then disclose the anomaly of two final settlements of the same guardianship, the statute contemplating and authorizing one only, and that after the termination of the guardianship. Again : the guardian cannot voluntarily enter on a final settlement, in any event, unless he could be compelled to such settlement. His right is concurrent with his duty, and with the right of the ward to compel performance of the duty. The court of probate had authority, and it was the right of the ward to compel partial or annual settlements whenever expedient to disclose the real state of the guardian's accounts, and to protect the ward against his mismanagement, waste, or fraud.—Revised Code, § 2421. But the ward was without power in the court of probate to compel a final settlement of the guardianship, until its termination. It is not contemplated the guardian shall have a higher right to proceed to a final settlement, than the ward has to compel it. The rights of the one, and of the other, are concurrent. We hold, therefore, the court of probate was without jurisdiction to proceed to a final settlement of the guardianship, while the relation of guardian continued, the ward being in minority and discovert. The decree on that settlement did not, therefore, operate as a bar to the present bill, for a final account and settlement, filed by the ward after her marriage. A different conclusion was attained in *Spencer v. Spencer* (50 Ala. 445), but we can not concur in it, for the reasons we have stated.

6. It seems the guardian sustained also the relation of trustee to the ward; and in his accountings in two annual settlements with the court of probate, preceding the invalid final settlement, he blended his accounts as trustee and as guardian. The bill seeks an account of the guardianship, and to charge the appellant only in the capacity of guardian. It is insisted, that the chancellor should not have ordered an account taken of the funds the appellant had received as trustee; that these funds are the subject of a distinct and separate claim, from the liability incurred as guardian; that the court of probate having no jurisdiction of trusts, charg-

[Lewis v. Allred and Wife.]

ing himself as guardian with these funds in that court, could not change the character of the claim against him. When the bill was filed, the ward had married, and in that event, or on her arrival at full age, her estate and interest became absolute according to the terms of the trust. If the trust estate had not been encumbered with the limitation over to others, on the happening of the death of the ward before marriage, or majority, the right of the guardian to elect to hold the funds in the one capacity, or the other—as trustee, or as guardian—would have been unqualified. The only question which could then have arisen, would have been, if the ward was seeking to charge him, as to the capacity in which he was liable. Such a question most often arises, where there is a union in one person of the fiduciary relations of executor or administrator, and of guardian.

In the first instance, the liability is only as executor, or administrator, and there must be some distinct and positive act of election to hold as guardian before there is a transfer of the liability.—*Davis v. Davis*, 10 Ala. 299; *Johnson v. Johnson*, 2 Hill Ch. 277. A charge against himself, and an accounting with the proper tribunal as guardian, would be a distinct and positive act of transfer.—*Conkey v. Dickinson*, 13 Metc. 51. As between the guardian and ward, in the present case, the guardian having elected to hold the funds as guardian, and not as trustee, he can not be permitted to retract the election at pleasure, defeating a suit he has induced the ward to institute against him in the capacity of guardian. If the events had happened on which he could become liable to others in the capacity of trustee—or if there was danger that such liability could be fastened on him, a different question would be presented. But, as the fact existed when the bill was filed, it was, and is now, immaterial to him whether he is charged as guardian or as trustee. The same person can discharge him, and the decree, in the present suit, would protect him from future litigation as to any claim against him in the capacity of trustee.

7. It was not shown by the appellant that he had not. mingled the Confederate bonds and currency with his own funds, had not used them, nor the circumstances under which he received them. A guardian may be relieved from liability, who, during the war, exercising reasonable diligence, in good faith received Confederate currency in payment of debts due the ward, if without fault on his part such currency perished in his hands.—*Key v. Jones*, 52 Ala. 238. He can not acquit

himself of liability merely by showing that he had received such funds. The *onus* is upon him to show there was diligence and good faith, and that he did not commingle the funds with his own, nor use them for his own purposes. The appellant has not shown these facts, and his exceptions to the report of the register were properly overruled.

The decree is affirmed.