# City of Birmingham *v.* Brown.

## *Violating Municipal Ordinance.*

(Decided June 1, 1915.   Rehearing denied June 15, 1915.
69 South. 263.)

1. *Municipal Corporation; Ordinance; Violation; Limitations.*—
Construing section 89, Constitution 1901, and section 1251, in the light
of the statutes applicable to municipal corporations, and in view of
the fact that the state prescribes limitations for practically all of-
fenses, it is held that the public policy of the state is in favor of
barring prosecutions by limitation and that prosecutions for a viola-
tion of city ordinances are barred in analyogy to the state statute.

2. *Same.*—In view of the difference noted by the Constitution be-
tween "power" and "jurisdiction," and construing sections 1215,
1221, 7347 and 7348, Code 1907, and section 168, Constitution 1901,
it is held that a prosecution for violating a municipal ordinance
before the city recorder must be instituted within 60 days after the
offense, as in case of a justice of the peace.

(But see *City of Birmingham v. Brown,* 70 South. 718, where it is
held by the Supreme Court that the twelve months statute, section
7347, Code 1907, is applicable to prosecutions before the recorder,
and that section 7348, Code 1907, is without application.—Reporter.)

3. *Same; Violation; Action.*—An action of debt for recovery of
the penalty fixed for the violation of a municipal ordinance may be
brought by the city after the expiration of the time within which a
criminal prosecution must be instituted.

4. *Criminal Law; Former Jeopardy; Violating Ordinance.*—Where
a defendant was prosecuted for the violation of a city ordinance, and
discharged because the prosecution was not instituted within the
time prescribed therefor by the statute of limitations, and such
offense is also a violation of the state law, he cannot plead that dis-
charge as a condition barring prosecution under the state law, since
he was never in jeopardy.

(Brown, J., dissents.)

APPEAL from Jefferson Criminal Court.

Heard before Hon. SAMUEL E. GREENE.

Jerome S. Brown was prosecuted before the recorder
of the city of Birmingham for violating a city ordinance,
and on conviction there appealed to the criminal court,
where judgment was had quashing the complaint and
discharging defendant.   The city appeals.   Affirmed.

(The majority opinion was reviewed by the Supreme
Court on writ of certiorari to the Court of Appeals, and

the writ was granted with opinion holding that the provisions of § 7347, Code 1907, were applicable as to limitations in prosecutions for violating municipal ordinances, and that the provisions of § 7348 were not applicable.—*City of Birmingham v. Brown*, 70 South. 718. —Reporter.)

ROMAINE BOYD, and JOSEPH P. MUDD, for appellant.

A. LATADY, for appellee.

THOMAS, J.—The sole question in this case is: Within what time is a prosecution for a violation of a city ordinance barred?

Our Municipal Code (Political Code of Alabama, §§ 1046 to 1460, inclusive), which is now the charter of the towns and cities of the state, is silent upon the question of limitations for such prosecutions.

The Supreme Court of Georgia, acting upon the common-law principle embodied in the maxim, "Nullus tempus occurrit regem," have held that, where the municipal charter fails to provide a limitation, no lapse of time after the commission of an offense in violation of a city will bar a prosecution therefor, unless the ordinance itself, or other ordinances of the city, prescribe some limitation.—*Battle v. Marietta*, 118 Ga.. 242, 44 S. E. 994; *Bell v. Forsyth*, 126 Ga. 443, 55 S. E. 230; *Norris v. Thompson* (Ga. App.) 83 S. E. 866; *Ramsey v. Atlanta* (Ga. App.) 83 S. E. 148. In other words, the holding is that, in the absence of charter limitations, the municipality may fix such limitations as it may choose—1 year, 10 years, 20 years, or any other period—or none at all, and that whatever the municipality does in this particular will govern the matter.

(1) We can conceive of the correctness of this doctrine when applied to a condition different from that here obtaining—that is, when applied in a state or nation

whose public policy is against limitations—for instance, when applied at common law before the origin of statutes of limitations, at a time when the policy of the mother country was to let no time bar prosecutions for public offenses—when "no time ran against the king," who was the state. Then it might well be said, we think, that no time should run against the municipalities, which were but the instrumentalities of the king—the state— in the administration of government. But here, in a state whose positively declared public policy is and ever has been to fix a limitation upon all prosecutions for offenses in violation of its criminal statutes, except offenses of the gravest nature (those punishable capitally and arson, forgery, counterfeiting, second degree murder, and first degree manslaughter—Code, §§ 7344-7351), it seems to us, although we have great respect for the opinion of the Supreme Court of Georgia, that for us to follow that court and thereby to lay down a doctrine which would countenance no limitations whatever upon prosecutions for a violation of the penal ordinances of a municipality—mere minor infractions and against only the laws of the mere creature of the state, who, in making such laws, exercised only a limited portion of the sovereignty of the state, and that alone by the authority of the state—would be to say that the state, by its silence as to limitation, intended to confer, and did confer, upon its creature, the municipality, the authority to establish a public policy within its borders as to a violation of its penal ordinances wholly at variance with that existing by force of positive law as the settled public policy of the state with respect to a violation of its own criminal statutes.

This state, in its wisdom, has seen fit to declare, through its Legislature, that, as to minor offenses against its laws, the peace, respose, and good order of society can the better be subserved and conserved by fixing a

limitation to prosecutions therefor. Is it to be sup-
posed, then, that the state, through its Legislature, by
its silence on the subject of limitations as to prosecu-
tions for violations of municipal ordinances, intended to
permit a different policy as to them, and to leave it to
the municipality to determine whether, in this particu-
lar, it will follow the policy of the state or adopt an
entirely different policy, one of no limitation at all or
one of a different limitation from that of the state? Our
state Constitution (Const. 1901, § 89) provides: "The
Legislature shall not have power to authorize any mu-
nicipal corporation to pass any laws inconsistent with
the laws of this state."

Keeping within the spirit and letter of this provision,
the Legislature, in granting a general charter to the
municipalities of this state (Pol. Code, §§ 1046-1460),
under which appellant city is operating, has provided
therein as follows: "Municipal corporations shall have
power from time to time to adopt ordinances and reso-
lutions not inconsistent with the laws of this state, to
carry into effect or discharge the powers and duties con-
ferred by this chapter, and to provide for the safety,
preserve the health, promote the prosperity, improve
the morals, order, comfort, and convenience of the
inhabitants of the municipality, and to enforce obedience
to such ordinances by fine."—Political Code, § 1251.

Under these provisions, if not also upon common-law
principles, the ordinances of a municipality, in order
to be valid, must be not only not inconsistent with the
laws of the state, but also not inconsistent with the
public policy of the state.—*Georgia Fruit Exchange v.
Turnipseed,* 9 Ala. App. 128, 62 South. 542; *Hewlett v.
Camp,* 115 Ala. 499, 22 South. 137; 21 Am. & Eng. Ency.
Law (2d Ed.) 980, § 7, and cases cited in notes 7 and 8.

Consequently it is our opinion that where the munici-
pal charter fixes no limitation upon prosecutions for

violations of city ordinances, the public policy of the state, as expressed in the general statutes of the state fixing limitations upon prosecutions for misdemeanors which are crimes against state laws, that are punishable by fine and by jail and hard-labor sentences for the county, and which are consequently analogous to offenses against municipal ordinances, that are also punishable by fine and by jail and hard-labor sentences, though for the city, must and does obtain so far as applicable as to violations of city ordinances, and that any city ordinance prescribing a different limitation, or no limitation at all, is void as against the public policy of the state.

The public policy of the state on the subject of limitation of prosecutions for misdemeanors is expressed in two general statutes; one (Code, § 7347) providing that prosecutions in the circuit, city, or county court for misdemeanors must be commenced within 12 months next after the commission of the offense, and the other (Code, § 7348) providing that prosecutions before a justice of the peace for misdemeanors within his jurisdiction must be commenced within 60 days next after the commission of the offense. One or the other of these limitations—either the 12-month or the 60-day limitation—must (there being no limitation fixed in the municipal charter) obtain as to prosecutions for violation of city ordinances, not as a statute, but as a matter of public policy, in order that the policy of repose existing in the state as to prosecutions may prevail in the municipality, as otherwise and without one or the other of the restrictions mentioned there is no restriction whatever on the city, and it could adopt a policy entirely at variance with that of the state, a policy of no limitation at all or of a different limitation.

Of course, we are not to be understood as deciding a question not before us, and that is that the state could

not, by statute, prescribe a different limitation for prosecutions for a violation of municipal ordinances from the limitation it has prescribed for prosecutions of misdemeanors, but merely as holding that when the state law is silent on the subject of the limitation of prosecutions for violations of municipal ordinances, the public policy of the state, as declared in its general statutes fixing limitations as to prosecutions for misdemeanors, must prevail as to prosecutions for violations of municipal ordinances.

(2) If, then, one or the other of the limitations mentioned as fixed by statute for the prosecution of misdemeanors must, as a matter of public policy, operate as to prosecutions for the violation of municipal ordinances, which shall it be—the 12-month limitation, which is the limitation existing as to such prosecutions when commenced in the circuit, city, or county court, or the 60-day limitation, which is the limitation existing when such prosecutions are commenced in a justice of the peace court? We think the statutes of the state, which establish a recorder's court and which define and declare the powers, duties, and jurisdiction of a recorder, before whom only can a prosecution for a violation of a municipal ordinance be commenced, answer this question and show impliedly that it was the legislative purpose, in declaring, as the Legislature did in such statutes, that the recorder, "in criminal and quasi criminal matters," which includes trials for the violation of municipal ordinances, should "have the power of an ex officio justice of the peace" to limit prosecutions before a recorder for a violation of municipal ordinances to 60 days, the limit fixed by statute, as seen, for prosecutions before a justice of misdemeanors within his jurisdiction. Section 1215 of the Political Code thus declares: "It shall be the duty of the recorder * * * to hear and determine all cases for the breach of the ordinances and by-

laws of the city that may be brought before him. * * *
Such recorder is especially vested with and may exercise
in the city, and within the police jurisdiction thereof,
full jurisdiction in criminal and quasi criminal matters,
and may impose the penalties prescribed by ordinance
for the violation of ordinances and by-laws of the city,
and shall have power of an ex officio justice of the
peace, except in civil matters."

The power of an ex officio justice of the peace is, of
course, the same as the power of a justice of the peace
(Const. 1901, § 168; *Williams v. Woolf,* 37 Ala. 298;
*Tyson v. Chestnut,* 118 Ala. 387, 24 South. 73), and
therefore, when it is said that the recorder shall have
the power of an ex officio justice of the peace, it means
that he shall have the power of a justice of the peace, no
more and no less, except in such particulars as such
power may be enlarged or limited, in the case of the
recorder, by other provisions of the said statute so defin-
ing the powers of a recorder. There are other such pro-
visions which do enlarge the recorder's power beyond
that of a justice of the peace—for instance, a recorder
has the power to sentence to hard labor for non-payment
of costs a person convicted before him of a violation of
a city ordinance (Code, § 1216), while a justice of the
peace has no power to sentence for non-payment of costs
a person convicted before him of a misdemeanor (Code,
§ 6734)—but none of these provisions have reference to
the power now under consideration, the power to try
an offender after the lapse of 60 days for an offense of
which the officer has final jurisdiction. If a justice of
the peace has not the power, then a recorder, whose
power in this particular is the same as that of a justice
of the peace, has not such power.

It is true that section 1221 of the Code enlarges the
jurisdiction of a recorder beyond that of a justice of the
peace by giving him concurrent jurisdiction with county

courts of all misdemeanors committed within the town
or city or police jurisdiction thereof—the final jurisdic-
tion of the county court as to misdemeanors exceeding
that of a justice of the peace (Code, §§ 6700, 6733)—yet
jurisdiction and power are recognized in our Constitu-
tion and statutes as different things, and therefore,
though the recorder has by express statute (Code, sec-
tions last cited) jurisdiction exceeding that of a justice
of the peace, his power, by express statute (Code, §
1215), is limited to that of a justice of the peace, except
in so far as it has been enlarged by other statutes, which
have not done so, as pointed out, in particulars here im-
portant. Justices of the peace have, concurrently with
county courts, jurisdiction of violations of the Sunday
law, vagrancy, assaults, assaults and batteries, etc.
(Code, § 6733), but justices of the peace have no power
to exercise that jurisdiction, unless the prosecution is
commenced within 60 days after the commission of the
offense (Code, § 7348), while county courts have the
power to exercise that jurisdiction if the prosecution is
commenced within 12 months after the commission of
the offense (Code, §§ 7347, 6700). Our Constitution
(section 168) provides that: "The Governor may
appoint not more than one notary public with all of the
powers and jurisdiction of a justice of the peace for
each precinct," etc.

It is thus clear that in the contemplation of our Con-
stitution and statutes there is a difference between the
terms "power" and "jurisdiction." Consequently we
hold that a prosecution for a violation of a municipal
ordinance, which can only be commenced before a re-
corder, whose "powers," as stated in the statute creating
the office, are those of a justice of the peace, must be
commenced within 60 days after the commission of the
offense, since a justice of the peace has no power to en-
tertain a prosecution, though as to a matter of which he

has final jurisdiction, after the lapse of 60 days from the commission of the offense.

It follows that the lower court did not err in discharging defendant, it appearing, without dispute, that the offense was committed more than 60 days before the commencement of the prosecution, and did not err in declaring void the city ordinance prescribing a limitation of 12 months.

(3) An action of debt for the recovery of the penalty fixed for a violation of the ordinance might be brought by the city after the expiration of 60 days, but not a criminal prosecution for the enforcement of the ordinance.

Affirmed.

BROWN, J.— (Dissenting.)—This prosecution was commenced by the appellant on the 5th day of April, 1913, before one of its recorders, against appellee, charging that appellee, before the commencement of the prosecution, and within the police jurisdiction of the city, on, to-wit the 14th day of December, 1912, published, gave way, sold, or caused to be published, given away, circulated, or sold, a certain newspaper or print, commonly known as Howle's Iconoclast, which newspaper or print was of an obscene, licentious, lewd, or libelous nature," in violation of section 1044 of the Code of Ordinances of the city of Birmingham. The appellee was convicted in the recorder's court and appealed to the criminal court of Jefferson county. In that court motion was made to quash the complaint and discharge the defendant on the ground that the prosecution was commenced more than 60 days after the offense was alleged to have been committed. In support of this motion, appellee exhibited to the court as evidence the warrant of arrest bearing date April 5, 1913, and the appellant offered in opposition to the motion section 835 of the Code of

[City of Birmingham v. Brown.]

Ordinances providing: "Prosecutions for violation of the city ordinances must be commenced within twelve months after the commission of the act or offense complained of, and may be begun by summons or warrant of arrest, or by arrest without warrant, in the manner hereinafter prescribed."

The court granted the motion, quashed the complaint, and discharged the defendant, as appears on the theory that section 835, supra, was in conflict with section 7348 of the Code of 1907, providing that "prosecutions before a justice of the peace for offenses within his jurisdiction, unless otherwise provided, must be commenced within sixty days next after the commission of the offense" and that said section 835 of the Code of Ordinances was therefore void. This appeal is brought under the provisions of section 1220 of the Code to review that judgment of the criminal court.

It is so manifest that there is no conflict between the statutes and the Code of Ordinances in the particular above set out that there is no room for argument to sustain appellee's contention. One applies exclusively to prosecutions for violation of the by-laws and ordinances of the city, and has no application whatever to offenses within the jurisdiction of justices of the peace, and its provisions are expressly limited to that class of offenses. To bring prosecutions for the violation of municipal ordinances within the purview of the provisions of section 7348 of the Code will require an amendment of the statute, the exercise of legislative functions, a function vested by the Constitution in the Legislature, and not in the courts.—Const. 1901, § 44.

The reasoning in the majority opinion as to the construction of the statute defining the duties, jurisdiction, and powers of recorders is "overfine" and illogical. These statutes should not be dissected and each clause construed to itself; they are in pari materia, and should be

construed together, and when so construed, they confer upon the recorders of cities and towns: (1) Exclusive original jurisdiction of all offenses for the violation of the ordinances and by-laws of the municipality, subject to the right of appeal to the circuit court or courts of like jurisdiction; (2) jurisdiction concurrent with the county court of all misdemeanors committed within the police jurisdiction of the municipality; and (3) the powers of a justice of the peace sitting as a magistrate with jurisdiction to hear preliminary trials for all offenses not within the final jurisdiction of the recorder, and with authority to issue warrants in criminal cases returnable to county courts, or courts of like jurisdiction and procedure.

Section 1215 of the Code, in its very terms, is a general grant of jurisdiction, authority, and power, and deals with all the classes of jurisdiction conferred on the recorder and more specifically defined and limited in the succeeding sections. This section provides: "Such recorder is especially vested with and may exercise in the city, and within the police jurisdiction thereof, full jurisdiction in criminal and quasi criminal matters * * * and shall have the powers of an ex officio justice of the peace except in civil matters."

Section 1216 specifically defines the jurisdiction and power of the recorder as to the enforcement of by-laws and ordinances of the corporation, section 1217 provides for and regulates the right of appeal in such cases, and sections 1218 and 1219 prescribe the procedure on appeal to the circuit court or court of like jursidiction, and the manner of enforcing the judgment and sentence on appeal, and section 1220 provides for and regulates appeals from judgments of the circuit court or courts of like jurisdiction in such cases to the Appellate or Supreme Court. Section 1221 deals with the next class of jurisdiction, and confers upon the recorder all the jurisdic-

tion and power of the county court over misdemeanors committed within the police jurisdiction, and section 1222 prescribes the same punishment as provided by law of the state, and the judgment of the recorder in such cases, whether it be of conviction or acquittal, is a bar to a prosecution in the state court. And section 1223 deals with the next class of jurisdiction and provides: "In all cases where persons are brought before the recorder, if on investigation of the charge there is reasonable cause to believe that a felony has been committed and that the defendant is guilty thereof, such officer only has authority to bind such defendant over to appear before the criminal or circuit court or other court of like jurisdiction of the county and to proceed in all respects in such cases as justices of the peace are required by law to proceed."

The facts upon which the charge in this case, if the publication was libelous, and published of another than the publisher, and if such publication tended to provoke a breach of the peace, would not only be a violation of the ordinance, but would also be a violation of section 7338 of the Code, subjecting the offender to fine and imprisonment. Yet if the limitation of 60 days is applicable and the case had proceeded to trial on the merits, the effect of a trial and acquittal of the defendant before the recorder, although acquitted on the ground that the prosecution was barred before the recorder, the judgment in that case, under the provisions of section 1222 of the Code, would be a bar to further prosecution, although the statute fixing 60 days as a limitation has no application to the circuit courts or courts of like jurisdiction.—*Ex parte Ratley*, 188 Ala. 107, 66 South. 147; *Hazelton v. State, Infra,* 68 South. 715; *Brown v. State,* 105 Ala. 117, 16 South. 929.

There is nothing in the case of *Carter v. State,* 107 Ala. 146, 18 South. 232, that militates against this position.

In that case the defendant was tried for using abusive language in the presence of females, and undertook to plead as former jeopardy the fact that a prosecution for the same offense had been commenced before a justice of the peace, the pleas asserting that the justice had jurisdiction to finally try the case, and upon the defendant being brought before the justice he waived trial before the grand jury, and the justice required the defendant to enter into bond to appear at the next term of the circuit court to "await action of the grand jury." The prosecuting attorney did not test the sufficiency of this plea, but, treating it as good, filed replications thereto, setting up the same facts and the further fact that the prosecution before the justice was commenced 60 days after the offense was committed. The undisputed evidence sustained the replication, and on this state of the evidence the court instructed the jury that the defendant had not been put in former jeopardy. It is apparent from this statement that both the replications and the pleas presented an immaterial issue and were frivolous for the reason that the offense for which the defendant in that case was on trial was not one within the final jurisdiction of the justice (Code, § 6733), and the only jurisdiction that the justice had was that of a committing magistrate, and the only order he could make in the case is the one he did make, requiring the defendant to enter into bond for his appearance before a court having jurisdiction of the offense; and hence the remark of the court: "Lest it be thought that some sanction is given by us to the alleged defense of former jeopardy, if presented in some other shape than that in which the pleadings presented it in this case, we remark that the defense attempted was frivolous, and the plea, if the court had been moved thereto, ought to have been stricken out as such."

Furthermore, to apply the limitation of 60 days in such cases would be short of the "full jurisdiction" granted by section 1215, and would operate as a limitation on the powers and jurisdiction of the recorder not placed on courts of co-ordinate jurisdiction.

Municipalities are agencies of the state designed to aid in promotion of the peace and good order of its citizens, and the only limitation on its authority to adopt ordinances to this end is that its ordinances shall not be inconsistent with the laws of the state; and, in the absence of charter provisions prohibiting, inherent power exists in the municipality to regulate its own procedure in the enforcement of its ordinances.—McQuillin on Municipal Ordinances, § 303, pp. 475, 476; 1 Dill. Mun. Corp. (4th Ed.) § 410. The ordinance of the appellant thus fixing a limitation of 12 months for the commencement of prosecution, when considered in connection with the broad jurisdiction conferred on recorders to enforce, not only the by-laws and ordinances of the municipality, but jurisdiction co-ordinate with the county, circuit, and criminal courts over misdemeanors under the laws of the state, it is unreasonable to say that the Legislature ever intended that section 7348 should apply to and govern prosecutions before the recorder, even in misdemeanor cases, much less for the violation of municipal ordinances. Furthermore, the language of the statute, "and shall have power of an ex officio justice of the peace," etc., clearly demonstrates that the power here conferred was not a limitation of power as is held in the majority opinion, but an addition or accumulation of power.—State, ex rel. Vandiver v. Burke, 175 Ala. 561, 57 South. 870. There is certainly no conflict between the ordinance and section 7347, prescribing a limitation of 12 months for prosecutions in misdemeanor cases before circuit and city courts, and if reasoning by

analogy is to be applied, this section, rather than section 7348, should be accepted as the analogy. The terms "jurisdiction," "power," and "authority," found in section 1214, et seq., of the Code, are used in the broad sense of jurisdiction, which is defined as "the power to hear and determine matters in controversy."—*Pullman Palace Car Co. v. Harrison,* 122 Ala. 149, 25 South. 697, 82 Am. St. Rep. 68; *Lamar v. Gunter,* 39 Ala. 324; 3 Mayf. Dig. 1194, § 1. The conclusion is strengthened by the fact that in all the previous Codes of the state the statutes conferring jurisdiction on the intendant or mayor of towns and cities used indiscriminately the words "power and jurisdiction," "authority," and "power."— Code 1896, § 2951; Code 1886, § 1501; Code 1876, 1783; Code 1867, § 1503; Code 1852, ;§ 1239.

The question of the public policy of the state, it seems to me, is not involved, but if that is to be considered, in view of the fact that in some cases no limitation is prescribed, and in others different times are fixed for the commencement of prosecutions, the conclusion is irresistible that the "public policy" of the state is that in cases where no limitation is placed upon prosecutions by statute, there shall be no limitation. This is in line with the common-law doctrine, prevailing in this state. —Wood on Limitations, § 28; *State v. Cawood,* 2 Stew. 360; *Burt v. State,* 39 Ala. 617; *Barlow v. Lambert,* 28 Ala. 704, 65 Am. Dec. 374; *Peet v. Hatcher,* 112 Ala. 514, 21 South. 711, 57 Am. St. Rep. 45; 2 Mayf. Dig. 653. It is also in accord with the holdings of the Supreme Court of this state and the Georgia court referred to in the majority opinion.—*State, ex rel. Washington v. Hunter,* 67 Ala. 81; *Battle v. Marietta,* 118 Ga. 242, 44 S. E. 994; *Bell v. Forsyth,* 126 Ga. 443, 55 S. E. 230; *Norris v. Thompson* (Ga. App.) 83 S. E. 866; *Ramsey v. Atlanta* (Ga. App.) 148.

[City of Birmingham v. Brown.]

Holding these views, I entertain the opinion that the judgment appealed from should be reversed, and the cause remanded for further proceedings.

## ON REHEARING.

THOMAS, J.—We think the contention to the effect that the discharge of the defendant, because and for the reason that the prosecution was not commenced before the recorder within 60 days next after the commission of the offense, would be a bar to a subsequent prosecution under the state law for the same offense is entirely without merit, since the discharge of defendant on such ground certainly does not constitute jeopardy. —*Bailey v. State,* 107 Ala. 151, 18 South. 234; *Waddle v. Ishe,* 12 Ala. 308; *Savell v. State,* 150 Ala. 97, 43 South. 201; *Nicholson v. State,* 72 Ala. 176; *Morrisette v. State,* 77 Ala. 71.

However, we are unable to see how, even if it did, it could affect the consideration of the question before us. We find no reason for altering the views or holding expressed in the opinion.